2001 WY 26

**In the Matter of the Exemption From Immunization Requested by Susan Le-PAGE, Parent of Lisa LePage, a minor.**

**Susan LePage, Appellant (Petitioner),**

v.

**State of Wyoming, Department of Health, Appellee (Respondent).**

No. 00–10.

Supreme Court of Wyoming.

March 8, 2001.

Representing Appellant: Donald J. Rissler of Central Wyoming Law Associates, P.C., Riverton, WY; Robert T. Moxley of Gage & Moxley, Cheyenne, WY; and Steven H. Aden of The Rutherford Institute, Charlottesville, VA.

Representing Appellee: Gay Woodhouse, Attorney General; Michael L. Hubbard, Deputy Attorney General; and Marci M. Hoff, Assistant Attorney General.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

KITE, Justice.

[¶1] This case raises the fundamental question of whether the language of Wyo. Stat. Ann. § 21-4-309(a) (LEXIS 1999) mandates the issuance of an exemption from immunization for schoolchildren upon a written religious objection or whether it permits an inquiry by the Department of Health into the sincerity of the religious beliefs of an applicant. We hold that the Department of Health exceeded its statutory authority by applying the statute inconsistently with its clear and unambiguous language. Our holding is based on the premise that the language of § 21-4-309(a) is mandatory.

[¶2] We reverse.

## ISSUES

[¶3] Appellant Susan LePage presents the following issue:

Did the Wyoming Department of Health act arbitrarily and capriciously or otherwise abuse its discretion and legal authority in denying the claimed religious exemption of Appellant?

Appellee State of Wyoming, Department of Health phrases the issues as follows:

I. Was the Department of Health's final decision to deny the Appellant's request for a religious exemption in accordance with the law?

II. Was the Department of Health's denial of Appellant's request for a religious exemption constitutional and supported by substantial evidence?

## FACTS

[¶4] On March 25, 1999, Mrs. LePage requested a religious exemption from the hepatitis B vaccination pursuant to § 21-4-309(a) on behalf of her daughter. Mrs. LePage outlined her concerns regarding the hepatitis B vaccination in a four-page letter.[1] The State Health Officer for the Department of Health delayed a decision pending receipt of further information to assure that faith served as the basis for the request. In particular, the State Health Officer asked Mrs. LePage to define her beliefs as being religious-based and to explain how she acted upon her faith in a consistent manner. Mrs. LePage responded with a second letter, which restated her concerns. On June 10, 1999, Mrs. LePage's request for exemption

---

1. Mrs. LePage's initial letter began:

We, the parents of ..., are petitioning for religious exemption of the Hepatitis B vaccine. Because of the strong religious beliefs of our family, we do not believe our daughter will engage in behavior that involve[s] exposure to blood or body fluids. We believe that the instituting of mandatory Hepatitis B vaccines is the direct result of our children growing up in a declining moral culture.

was denied, and she was informed that, if her daughter was not immunized, she would be unable to attend school.

[¶ 5] Mrs. LePage requested a hearing, and the matter was referred to the Office of Administrative Hearings (OAH). A hearing was held on August 5, 1999, at which time Mrs. LePage stated she had recently concluded that all vaccines were not "[G]od[']s will for our lives." The OAH rendered its decision and determined that Mrs. LePage had failed to provide evidence to justify the religious exemption.[2] The Department of Health issued an amended final decision on September 28, 1999, which specifically found that Mrs. LePage's objection was based on personal, moral, or philosophical beliefs rather than on a principle of religion or a truly held religious conviction. Mrs. LePage appealed from the decision, and the district court certified the case to this court pursuant to W.R.A.P. 12.09(b).

## STANDARD OF REVIEW

[¶ 6] When a case is certified to this court, we examine the administrative agency's decision as if we were the reviewing court of the first instance. *Petroleum Inc. v. State ex rel. State Board of Equalization,* 983 P.2d 1237, 1239 (Wyo.1999). The issue presented in this case requires us to interpret § 21–4–309(a). Statutory interpretation is a question of law. *Trefren v. Lewis,* 852 P.2d 323, 325 (Wyo.1993). This court affirms an agency's conclusions of law when they are in accordance with the law. *Corman v. State ex rel. Wyoming Workers' Compensation Division,* 909 P.2d 966, 970 (Wyo.1996). When an agency has not invoked and properly applied the correct rule of law, we correct the agency's errors. *Gneiting v. State ex rel. Wyoming Workers' Compensation Division,* 897 P.2d 1306, 1308 (Wyo.1995).

## DISCUSSION

[¶ 7] The United States Supreme Court held in *Jacobson v. Commonwealth of Massachusetts,* 197 U.S. 11, 24–25, 25 S.Ct. 358, 49 L.Ed. 643 (1905), that a state has the authority to enact a mandatory immunization program through the exercise of its police power. Moreover, Wyo. Stat. Ann. § 35–4–101 (LEXIS 1999) grants the Department of Health the power to prescribe rules and regulations for the management and control of communicable diseases.

[¶ 8]. The question presented in this case requires us to interpret the language of § 21–4–309(a), which provides for mandatory immunization of Wyoming schoolchildren. That statute provides in pertinent part:

(a) Any person attending, full or part time, any public or private school, kindergarten through twelfth grade, shall within thirty (30) days after the date of school entry, provide to the appropriate school official written documentary proof of immunization.... *Waivers shall be authorized by the state or county health officer upon submission of written evidence of religious objection* or medical contraindication to the administration of any vaccine.

Section 21–4–309(a) (emphasis added). Mrs. LePage asserts the clear language of the exemption statute confirms that the issuance

---

2. The OAH found in part:

15. The evidence shows that LePage did have her children vaccinated against other diseases in the past. It also shows that when LePage initially requested the religious exemption, it was based on her personal belief that the mandatory vaccination condoned immoral behavior which was contrary to how she raised her children. Both of her letters and the attachments provide information which reflect that LePage's objection, while religiously based, was in fact philosophical....

16. The first time LePage expressed a truly religious based objection to the hepatitis B vaccine was at the hearing. This Office does not question that LePage is a devoutly religious individual and that she spent extensive time praying, fasting and reading the Bible. This Office also does not question the fact that LePage now believes that all vaccinations are contrary to the word of her God and that she believes she sinned when having her children vaccinated in the past.

17. The change of position at hearing raises questions. Is this change really the result of her recent religious revelation or is it just a change to justify granting the exemption? To obtain a religious exemption, a person must present evidence that his/her objection to vaccination is grounded in religion and then evidence of conduct consistent with the belief must also be presented.

of a religious exemption is not a discretionary function but is a ministerial duty on the part of the Department of Health. Therefore, the Department of Health exceeded its authority by requiring more than an initial written objection which by statute appears to be sufficient to obtain a waiver.

[¶ 9] Conversely, the Department of Health argues that Wyoming's immunization waiver allows only for *religious* objections as opposed to personal or philosophical objections. Therefore, the Department of Health must review the asserted objection and determine whether it is based on sincerely held religious beliefs. The Department of Health determined that Mrs. LePage's religious waiver request was based on concerns regarding the health and safety risks of the vaccination as well as the mode of transmission of the hepatitis B virus. According to the Department of Health, Mrs. LePage failed to establish that the requested waiver was based on sincerely held religious beliefs which would entitle her to a waiver.

 [¶ 10] In interpreting statutes, we primarily determine the legislature's intent from the words used in the statute. *Allied–Signal, Inc. v. Wyoming State Board of Equalization*, 813 P.2d 214, 219 (Wyo.1991). "We have interpreted statutes on innumerable occasions, so our standard is well established." *Olheiser v. State ex rel. Wyoming Worker's Compensation Division*, 866 P.2d 768, 770 (Wyo.1994). First, we must determine whether a statute is clear or ambiguous. *Sue Davidson, P.C. v. Naranjo*, 904 P.2d 354, 356 (Wyo.1995). "[W]e determine if the statute is ambiguous by looking at the plain and ordinary meaning of the words contained therein." *Olheiser*, 866 P.2d at 770. A "statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability." *Allied–Signal, Inc.*, 813 P.2d at 220. "[W]hether an ambiguity exists in a statute is a matter of law to be determined by the court." *Id.* However, "[s]trict adherence to our Wyoming constitution demands that the judicial branch of government recognize that it is without discretion, nor does it have any latitude, to apply statutes contrary to legislative intent once that

intent has been ascertained." 813 P.2d at 219.

 [¶ 11] The principal language in the statute which delineates the requirement to obtain a waiver provides: "Waivers *shall* be authorized." Section 21–4–309(a) (emphasis added). This court has observed that, when the word "shall" is employed, it is usually legally accepted as mandatory. *Long v. State*, 745 P.2d 547, 549 (Wyo.1987). Where a statute uses the mandatory language "shall," a court must obey the statute as a court has no right to make the law contrary to what is prescribed by the legislature. *Thomson v. Wyoming In–Stream Flow Committee*, 651 P.2d 778, 787 (Wyo.1982).

[¶ 12] The choice of the word "shall" intimates an absence of discretion by the Department of Health and is sufficiently definitive of the mandatory rule intended by the legislature. Similarly, the statutory language lacks any mention of an inquiry by the state into the sincerity of religious beliefs. As a result, the Department of Health exceeded its legislative authority when it conducted a further inquiry into the sincerity of Mrs. LePage's religious beliefs.

 [¶ 13] When reviewing an administrative agency's decision, this court will consider whether the agency exceeded its statutory authority. *See* Wyo. Stat. Ann. § 16–3–114(c)(ii)(C) (LEXIS 1999). As a creature of the legislature, an administrative agency has only the powers granted to it by statute, and the justification for the exercise of any authority by the agency must be found within the applicable statute. *Montana Dakota Utilities Co. v. Public Service Commission of Wyoming*, 847 P.2d 978, 983 (Wyo. 1993). A statute will be strictly construed when determining the authority granted to an agency. *Id.* "Any agency decision that falls outside the confines of the statutory guidelines articulated by the legislature is contrary to law and cannot stand." *Tri County Telephone Association, Inc. v. Wyoming Public Service Commission*, 910 P.2d 1359, 1361 (Wyo.1996). In other words, reasonable doubt of the existence of a power must be resolved against the exercise thereof. A doubtful power does not exist. *French*

*v. Amax Coal West,* 960 P.2d 1023, 1027 (Wyo.1998). The statute provides mandatory language, and the Department of Health may not circumvent the legislature's clear limitation of its powers or expand its power beyond its statutory authority. There is no justification found within the statute for the Department of Health to institute a religious inquiry. As a result, the decision to do so is not in accordance with the law.

[¶ 14] Furthermore, construing the statute as the Department of Health suggests raises questions concerning the extent to which the government should be involved in the religious lives of its citizens. Should an individual be forced to present evidence of his/her religious beliefs to be scrutinized by a governmental employee? If parents have not consistently expressed those religious beliefs over time, should they be denied an exemption? Can parents have beliefs that are both philosophical and religious without disqualifying their exemption request? Should the government require a certain level of sincerity as a benchmark before an exemption can be granted? If the legislature chose to address these types of questions with further legislation, such legislation would call into question the constitutional prohibition against governmental interference with the free exercise of religion under Article 1, Section 18 of the Wyoming Constitution. However, those issues need not be addressed in this case because the statute does not provide the authority for such inquiry.

[¶ 15] We do not believe that the legislature, through its adoption of § 21–4–309(a), anticipated or authorized a broad investigation into an individual's belief system in an effort to discern the merit of a request for exemption. Rather, we construe the statutory language as mandatory and the exemption as self-executing upon submission of a written objection.

■ [¶ 16] In her request for exemption, Mrs. LePage fully complied with both the statutory and the regulatory requirements. However, it should be noted that, in attempting to enforce the immunization for hepatitis B, the Department of Health failed to abide by its own regulations which do not include the hepatitis B vaccination. Department of Health Rules, *Immunization Regulations,* ch. 1, § 7(b) (1–13–92). "An administrative agency must follow its own rules and regulations." *Antelope Valley Improvement v. State Board of Equalization for State of Wyoming,* 992 P.2d 563, 566 (Wyo. 1999), *opinion clarified at* 4 P.3d 876 (Wyo. 2000). This could be an independent reason for reversing the State Health Officer's conclusion that a religious waiver was necessary for exemption from the hepatitis B vaccination.

[¶ 17] We recognize the genuine concern that there could be increased requests for exemption and a potential for improper evasion of immunization. The state certainly has a valid interest in protecting public schoolchildren from unwarranted exposure to infectious diseases. However, we have been presented with no evidence that the number of religious exemption waiver requests are excessive and are confident in our presumption that parents act in the best interest of their children's physical, as well as their spiritual, health. Again, if problems regarding the health of Wyoming's schoolchildren develop because this self-executing statutory exemption is being abused, it is the legislature's responsibility to act within the constraints of the Wyoming and United States Constitutions.

■ [¶ 18] Our statutory interpretation is conclusive; therefore, upon proper application of the statute, there is no basis for further discussion of the constitutional issues raised in this case. As is our practice, we will not address constitutional issues if we resolve a case on other grounds. *State Highway Commission of Wyoming v. Sheridan–Johnson Rural Electrification Association,* 784 P.2d 588, 591 n. 4 (Wyo.1989).

[¶ 19] Reversed.