2001 WY 69

**Martin R. MAYLAND, Appellant (Petitioner),**

**v.**

**David A. FLITNER; and The Board of County Commissioners of the County of Big Horn, Appellees (Respondents).**

No. 00–143.

Supreme Court of Wyoming.

Aug. 10, 2001.*

---

\* This case was originally assigned to Justice Thomas on November 17, 2000, for the rendering of a proffered majority opinion. The case was reassigned to Justice Kite on February 5, 2001.

Joseph E. Darrah and S. Joseph Darrah of Darrah & Darrah, P.C., Powell, WY, Representing Appellant.

Randy L. Royal, Greybull, WY, Representing Appellee Flitner.

No appearance for Board of County Commissioners.

Before LEHMAN, C.J.; GOLDEN and KITE, JJ.; and DAN SPANGLER, D.J. (Ret.).

KITE, Justice.

[¶ 1] Martin R. Mayland seeks review of a final decision of the Big Horn Board of County Commissioners (County Commissioners) granting David A. Flitner a private road over Mr. Mayland's property and awarding damages for the taking. The district court certified the matter to this court. Mr. Mayland contends: (1) The final decision is not supported by substantial evidence; (2) the findings do not comply with the specificity requirements of the Wyoming Administrative Procedure Act; (3) no good faith finding was made; (4) Mr. Flitner failed to comply with statutory requirements including, but not limited to, studying alternative routes and, therefore, the County Commissioners did not have jurisdiction to determine the matter; (5) the decision was made in an executive session in violation of the Public Meetings Act; (6) the damages determination is defective because the appraisers failed to set out before and after values per *Lindt v. Murray*, 895 P.2d 459 (Wyo.1995); and (7) interest should have been awarded to Mr. Mayland from the date Mr. Flitner obtained a temporary restraining order granting him full use of the road. We affirm.

## FACTS

[¶ 2] Mr. Mayland and Mr. Flitner own adjacent properties in the Big Horn Mountains. There are only two existing routes by which Mr. Flitner can access his property. One is a road that crosses Mr. Mayland's private property and connects with a public road known as Snowshoe Pass Road (Mayland/Snowshoe Pass Road). The other, referred to as Black Mountain Road, crosses over private lands owned by Loren Good, Richard Whaley, and Stan Flitner (Mr. Flitner's brother), Bureau of Land Management (BLM) property, and state land.

[¶ 3] The Flitner family had used Mayland/Snowshoe Pass Road since at least the 1930s and, prior to 1995, had never been denied access by the Mayland family. In approximately June of 1994, Mr. Flitner commenced construction of several buildings on his property. In connection with the construction project, Mr. Flitner requested and

received Mr. Mayland's permission to make some improvements to Mayland/Snowshoe Pass Road. By November 1994, approximately sixty percent of the building construction was completed. In January 1995, Mr. Mayland's then–legal counsel advised Mr. Flitner by letter that permission to use Mayland/Snowshoe Pass Road was terminated and an easement would be considered for payment of $100,000 and transfer of a specific forty–acre parcel of land.

[¶ 4] Mr. Flitner commenced proceedings in February of 1995 for establishment of a private road pursuant to Wyo. Stat. Ann. §§ 24–9–101 to –104 (LEXIS 1999) (amended 2000). In the summer of 1995, he obtained a temporary restraining order from the district court in order to maintain access to his property to continue construction until the county acted on his application.

[¶ 5] A hearing on the Application for Establishment of a Private Road was held before the County Commissioners on April 30, 1996. Within approximately a month thereafter, Mr. Mayland filed a motion to reopen the evidence alleging new evidence had come to light that would impeach Mr. Flitner's April 30, 1996, hearing testimony. Mr. Flitner filed a traverse to the motion to reopen but consented to the County Commissioners receiving the additional evidence. A second hearing was held before the County Commissioners on September 4, 1996. The County Commissioners issued Findings of Fact and Conclusions of Law on June 17, 1997, and concluded: (1) Mr. Flitner had demonstrated the necessity of the private road; (2) he had complied with the procedural requirements and aspects of § 24–9–101; (3) he had established he had no legally enforceable existing outlet or connection with a public road; (4) the private road should be established; and (5) viewers should be appointed to locate and determine the value of the road as contemplated in § 24–9–101.

[¶ 6] Thereafter, three appraisers were appointed, an instructions hearing was held regarding the process of computing damages, the appraisers viewed the properties, and a damages hearing was held which concluded on September 27, 1999. Mr. Mayland presented his appraiser who testified the total loss in value of Mr. Mayland's property was $231,000. His opinion concluded the $2,800,000 "before value" of the property incurred a diminution in value of seven percent or $196,000 due to the road. He added $5,272 for the estimated value of acres taken by the thirty–foot right–of–way (computed by multiplying 6.39 acres times an estimated value of $825 per acre using values reflective of recreational property) and $30,000 for the cost to cure reservoir/water system damage which he alleged the road would cause.

[¶ 7] Mr. Flitner presented testimony of his expert who conducted a review of Mr. Mayland's appraisal. She testified the value of Mr. Mayland's property before the taking was $2,334,353 and the value after was $2,331,637 for a total loss in value due to the taking of $2,716. She utilized a lower per acre value based on agricultural property for the acres taken by the right–of–way and concluded other damage to the property would not occur.

[¶ 8] The appointed appraisers submitted their final conclusion to the County Commissioners on December 1, 1999, which determined Mr. Flitner was obligated to compensate Mr. Mayland $5,272 (6.39 acres valued at $825 per acre) for the taking of the right–of–way and an additional $10,000 for other damages for a total of $15,272. There was no direct reference in this document to values before and after the taking.

[¶ 9] The County Commissioners held a hearing on January 18, 2000, to receive the parties' objections to (1) the Findings of Fact and Conclusions of Law, (2) the appraisers' report, and (3) the private road application procedure in general. The Order Adopting Report of Appraisers and Establishing Private Road was issued by the Country Commissioners on February 1, 2000. The order adopted the appraisers' determination of damages but awarded Mr. Mayland no interest on the damages and no litigation costs. The order also required Mr. Flitner to pay Big Horn County $17,446.21 for the costs incurred by the county in "locating this road." It was further provided the order would be filed with the Big Horn County Clerk and Recorder upon payment of the sums found due, thereby legally establishing

the private road. Mr. Flitner made payment, and the order was duly recorded. Mr. Mayland then filed a Petition for Judicial Review of Administrative Action, which the district court certified to this court on its own motion.

## STANDARD OF REVIEW

[¶ 10] In reviewing appeals from agency action, we are in the same position as the district court; we cannot substitute our judgment for that of the agency as long as the decision is supported by substantial evidence. *Gold v. Board of County Comm'rs of Teton County*, 658 P.2d 690, 695 (Wyo.1983). Our task is to examine the entire record to determine whether substantial evidence supported the agency's findings of facts. *Dunning v. Ankney*, 936 P.2d 61, 63 (Wyo.1997). No deference is given to an agency's conclusions of law. *Martens v. Johnson County Board of Comm'rs*, 954 P.2d 375, 379 (Wyo.1998). If the agency has not invoked and properly applied the correct rule of law, we are obligated to correct the error.

*Miller v. Bradley*, 4 P.3d 882, 886 (Wyo. 2000).

## DISCUSSION

### A. Adequacy of the Findings of Fact and Conclusions of Law

[¶ 11] The first three issues posed by Mr. Mayland principally contest the adequacy of the County Commissioners' Findings of Facts and Conclusions of Law. In order to address the contentions in an efficient and cohesive manner, we reframe the core question for review as follows: Were the County Commissioners' Findings of Fact and Conclusions of Law consistent with the requirements of the Wyoming Administrative Procedure Act, supported by substantial evidence, and, therefore, adequate to support the grant of a private road?

[¶ 12] Mr. Flitner brought his application for establishment of a private road pursuant to § 24–9–101 which provided in part:

Any person whose land has no outlet to, nor connection with a public road, may apply in writing to the board of county commissioners of his county for a private road leading from his premises to some convenient public road. At least sixty (60) days prior to applying to the board, the applicant shall give notice in writing to the owner, resident agent or occupant of all lands over which the private road is applied for, of his intent to apply for a private road.... At the hearing, all parties interested may appear and be heard by the board as to the necessity of the road and all matters pertaining thereto. Upon the hearing of the application, whether the owner or others interested appear or not, if the board finds that the applicant has complied with the law and that the private road is necessary, the board shall appoint three (3) disinterested freeholders and electors of the county, as viewers and appraisers, and shall cause an order to be issued directing them to meet on a day named in the order on the proposed road, and view and locate a private road according to the application therefor, and to assess damages to be sustained thereby.

[¶ 13] This court has found good faith in bringing the application is an essential prerequisite. *See Martens v. Johnson County Board of Commissioners*, 954 P.2d 375, 380 (Wyo.1998) (citing *Dunning v. Ankney*, 936 P.2d 61, 64–65 (Wyo.1997); *Lindt*, 895 P.2d at 462). In addition, we have found "it was the legislature's intent that convenience and reason should prevail in the establishment of roads, but that the route chosen does not have to be the most convenient and reasonable route possible." *Id.* Furthermore, in *McGuire v. McGuire*, 608 P.2d 1278, 1289 (Wyo.1980), we recognized that proceedings before a county commission under § 24–9–101 are governed by the Wyoming Administrative Procedure Act. In this regard, it has been acknowledged:

An administrative agency is charged with the duty of supporting its action with adequate findings of fact. Wyo. Stat. Ann. § 16–3–110 (Michie 1997). Section 16–3–110 states in pertinent part:

A final decision or order adverse to a party in a contested case shall be in writing or dictated into the record. The final decision shall include findings of

fact and conclusions of law separately stated. Findings of fact if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

In discharging its duty under § 16–3–110, the agency must "make findings of basic facts upon all of the material issues in the proceeding and upon which its ultimate findings of fact or conclusions are based." *Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission*, 446 P.2d 550, 555 (Wyo. 1968). This Court needs to know "why" an agency decided the way it did. When an agency does not make adequate findings of basic fact, we do not have a rational basis upon which to review its ultimate findings and conclusions. In cases where the findings do not adequately explain the rationale for the agency's decision, we remand the matter to the agency so that it can make additional findings.

*Scott v. McTiernan*, 974 P.2d 966, 969–70 (Wyo.1999) (some citations omitted).

[¶ 14] Based on a somewhat confused presentation by the parties, the contested findings of fact and conclusions of law appear to be as follows:

### Findings of Fact

7. [Mr. Flitner] has chosen as his proposed access, a reasonable and convenient means of traversing from his property to a convenient public road which is the road at the Snowshoe Pass in the National Forest.

8. The Black Mountain Road is not a public road in its entirety. The Black Mountain Road traverses property owned by the State of Wyoming, the Whaley family, Stan and Mary Flitner, Loren Good, all of which is subject to closure at the will and control of the private property owners.

9. The records of the Big Horn County Clerk and Recorder in Basin, Wyoming, do not reflect any easements, rights of passage, or other methods by which [Mr. Flitner] has any legally enforceable access upon, over and across the Black Mountain Road at the will of [Mr. Flitner]. In the past, private landowners have closed or obstructed the Black Mountain Road and those landowners have also indicated in the future that they reserve the right to close or restrict passage over private property which comprises parts of the Black Mountain Road.

10. Although the Black Mountain Road has been used by [Mr. Flitner] and some members of the public for many years, those portions of the Black Mountain Road which traverse private property do not constitute a public road and neither [Mr. Flitner] nor members of the public have unlimited access to the Black Mountain Road insofar as it crosses that private property. That the road proposed and described by [Mr. Flitner] in his application is a convenient road to allow [him] access to a convenient public road which is the road at Snowshoe Pass in the National Forest.

11. The Black Mountain Road is not a public road.

12. [Mr. Flitner] has demonstrated that the private road for which this application is filed is necessary.

### Conclusions of Law

1. [Mr. Flitner] has demonstrated that the private road which he seeks to establish pursuant to W.S. 24–9–101 is necessary.

. . . .

3. [Mr. Flitner] has no legally enforceable existing outlet to nor connection with a public road.

4. The private road as per the application of [Mr. Flitner] should be established and the Board of County Commissioners should appoint viewers to locate that road and determine the value of the road as contemplated by W.S. 24–9–101.

[¶ 15] Mr. Mayland contends the County Commissioners' Findings of Fact and Conclusions of Law are defective because they fail to find that Mr. Flitner brought his application in good faith. He asserts Mr. Flitner lacked the requisite "good faith" because he intentionally landlocked his property by obstructing an existing access. As the

application must be brought in good faith, we address this issue first.

[¶ 16] This court has noted various ways the concept of good faith has been defined:

> [W]e see definitions that match what most people probably think of when they hear the term [good faith]. In a chattel mortgage case over a century ago, we adopted this definition of good faith: "Good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious." *Cone v. Ivinson*, 4 Wyo. 203, 216, 33 P. 31, 34 (Wyo.1893). Many years later, we defined good faith as:
>
> > being honest, lawful intent, and the condition of acting without knowledge of fraud and without interest to assist in fraudulent or otherwise unlawful scheme, together with the definition set out in [*Cone*].
>
> *Blake v. Rupe*, 651 P.2d 1096, 1110 (Wyo. 1982), *cert. denied*, 459 U.S. 1208, 103 S.Ct. 1199, 75 L.Ed.2d 442 (1983). In a more recent case examining the conduct of police officers we said, "Our definition of good faith is that it encompasses an honest, lawful intent, and actions taken without knowledge of fraud and without any intent to assist in any fraudulent or otherwise unlawful scheme." *Brown v. Avery*, 850 P.2d 612, 617 (Wyo.1993) (Thomas, J., specially concurring).

*Williston Basin Interstate Pipeline Company v. Wyoming Public Service Commission*, 996 P.2d 663, 668 (Wyo.2000) (footnote omitted).

[¶ 17] On May 28, 1996, Mr. Mayland filed a motion to reopen the evidence alleging certain evidence which would impeach Mr. Flitner's testimony had come to his attention subsequent to the hearing. He claimed the new evidence would establish that Mr. Flitner had considered Black Mountain Road a direct public road to his premises prior to his intentional obstruction of that roadway. On September 4, 1996, the County Commissioners held a second hearing in order to receive testimony relating to these contentions. Mr.

Mayland claimed sometime in November of 1990, well prior to the private road application, Mr. Flitner directed an employee to drive a D–8 Caterpillar (D–8 Cat) and other equipment off the mountain via Black Mountain Road and, in that process, to obstruct the road and make it impassable. Mr. Mayland specifically asserted that a large rock had been purposefully placed by the D–8 Cat operator in the middle of White Creek where Black Mountain Road crossed the creek bed in order to render the road impassable.

[¶ 18] At the hearing, Terry Mueller, Mr. Flitner's former employee, testified that in November of 1990 he overheard Mr. Flitner give another employee, John Mefford, the D–8 Cat operator, instructions to obstruct Black Mountain Road in the process of bringing the D–8 Cat and other equipment off the mountain. It is relevant that Mr. Mueller was, at the time of this hearing, employed by Mr. Mayland and was paid based on a percentage of profits less expenses recognized by Mr. Mayland's ranch operations. The deposition of another former Flitner employee, Yancy Flora, was read into the record and was similar to Mr. Mueller's testimony to the effect that he had overheard an instruction being given to Mr. Mefford to obstruct access on Black Mountain Road. However, Mr. Mefford also testified at this hearing and denied that Mr. Flitner had ever instructed him to obstruct the Black Mountain Road access. On cross–examination, Mr. Mefford testified he had been fired by Mr. Flitner. He also testified at length as to the arduous process entailed in removing the D–8 Cat and other equipment from the mountain on that date in November of 1990. The snow and condition of the road made removal difficult and required that he build dirt ramps on the banks of White Creek in an endeavor to cross over the creek bed and up the opposing bank. He acknowledged it was possible as a result of the removal process that a rock could have ended up in the middle of the creek but denied purposefully placing a rock there to obstruct the path of Black Mountain Road.

[¶ 19] Although the County Commissioners did not make a specific finding of good faith, we conclude, based on the record and the

language of the findings, they weighed the evidence and rejected Mr. Mayland's claim. An entire hearing was devoted to Mr. Mayland's allegations of bad faith and Mr. Flitner's response. Substantial and persuasive evidence supported the conclusion Mr. Flitner did not purposefully secure the obstruction of Black Mountain Road prior to filing his private road application. Although the County Commissioners did not specifically find "good faith," they likewise did not find "bad faith." The requisite "good faith" is apparent and incorporated in the statutory language referenced in Finding No. 12, "[Mr. Flitner] has demonstrated that the private road for which this application is filed is necessary." Had Mr. Mayland sufficiently established his claim of bad faith, this finding could not have been made because it would not have been supported by the record. We conclude the record sufficiently demonstrates the "good faith" of the applicant as anticipated in *Dunning*. Although this analysis would be unnecessary had the County Commissioners made an explicit finding of good faith, its absence does not render the Findings of Fact and Conclusions of Law defective.

■ [¶ 20] Mr. Mayland also contends Mr. Flitner showed a lack of good faith by failing to evaluate alternate routes, including the Molly Cropsey livestock trail, thereby depriving the County Commissioners of jurisdiction to proceed with his application. Mr. Mayland is correct that this court has held:

> [An a]pplicant may not leave on the doorstep of the viewers a request that they map out a convenient private road for the applicant. The applicant has the responsibility for studying alternative routes and asking in good faith for one that is reasonable and convenient. Only then may the applicant be said to have complied with the law so that the county commissioners have jurisdiction to proceed.

*McGuire,* 608 P.2d at 1286. However, this holding has been qualified as follows:

> Under the *McGuire* case, a petitioner is required to study alternative routes. At the hearing, Dunning testified that he had studied alternative routes before he chose and applied for a road but that he did not document the information until shortly before the hearing was held. The evidence at the hearing did not contradict Dunning's testimony that he had studied the alternative routes, and an applicant is not required to document his study before making his application.

*Dunning,* 936 P.2d at 66 (citation omitted).

[¶ 21] Mr. Flitner provided a land description and detailed map showing the location of the requested road as Mayland/Snowshoe Pass Road. At the initial "necessity" hearing held on April 30, 1996, Mr. Flitner provided detailed testimony regarding the two existing routes to his property—Mayland/Snowshoe Pass Road and Black Mountain Road. He testified these two routes are the only existing roads available to access his property. He further explained Black Mountain Road crosses private property over which access had been denied and he believed that road was in unsatisfactory condition to provide consistent and practical access to his property. Mr. Mayland testified regarding the existing routes and which was preferable, as the following transcript excerpt reveals:

> Q Okay. You would agree, would you not, that [Mr. Flitner] has access, at least physical access, over the road across your property [Mayland/Snowshoe Pass Road] and that's one way into his place?
>
> A That's one way.
>
> Q And the other way is the Black Mountain road, is that correct?
>
> A That's right.
>
> Q Do you maintain that he has any other way in?
>
> A No.
>
> Q Okay. Now which of those two roads would you prefer to travel over—the Black Mountain road—
>
> A It depends. Right now the only choice that I would have would be the Black Mountain road.
>
> Q Okay. During the summer which one would you prefer to travel over?
>
> A I would prefer the Snow Shoe road.
>
> Q Okay. It's a whole lot better road, isn't it?
>
> A For the most part, yes.

This testimony was corroborated by the testimony of Floyd Collingwood, a witness appearing on behalf of Mr. Mayland:

Q [Black Mountain Road] is not suitable for a car, is it?

A It'd be pretty tough right now. The lower end, this top end's nothing.

Q Okay. Now which end is suitable?

A From Snow Shoe Pass down to the middle Saw Set.

Q Okay. But—

A Ten Springs and in that area.

Q From Dave Flitner's property down to Shell, it's not suitable for a car, is it?

A No, I wouldn't want to take a car on it.

[¶ 22] In *Walton v. Dana,* 609 P.2d 461, 463 (Wyo.1980) (emphasis added), this court interpreted the language of "§ 24–9–101, (W.S.1977), that '[a]ny person whose land ... has **no outlet** to, nor connection with a public road, may [apply] for a private road,' " as referring to *existing* outlets. At the time Mr. Flitner made application, there were only two *existing* outlets—Mayland/Snowshoe Pass Road and Black Mountain Road. We conclude the evidence was sufficient to meet the requirement established by *McGuire* and qualified by *Dunning* that a petitioner study any alternative routes. Therefore, the County Commissioners had jurisdiction to consider the application. Further, we reject the suggestion the County Commissioners erred in not considering the Molly Cropsey livestock trail as an alternative. It was not an *existing* road, and the County Commissioners were under no compulsion to seriously consider the suggestion that an entirely new road be built when two routes already exist. As we stated in *Ferguson Ranch, Inc. v. Murray,* 811 P.2d 287, 290 (Wyo.1991), a landlocked property owner cannot be forced to choose a wholly illogical, uneconomical, and unproductive road.

[¶ 23] Further, Mr. Mayland maintains there was insufficient evidence to support the County Commissioners' finding that private ownership rights on portions of Black Mountain Road precluded it from being considered a public road. It is Mr. Mayland's position that Black Mountain Road existed prior to the property along its course being conveyed from the United States government to private owners. Due to wording in the conveyance documents, he argues the public road continued to exist despite the transfer of the lands along its course to private ownership. On this basis, Mr. Mayland contends the County Commissioners' finding that the private landowners could prevent access was not supported by substantial evidence.

[¶ 24] Mr. Flitner introduced an August 1995 letter from the BLM Bighorn Basin Assistant Area Manager responsive to an inquiry regarding the legal status of Black Mountain Road, including public use and maintenance of the road. This letter provided, in relevant part, as follows:

We have reviewed the file for the [Black Mountain] road, and it appears the road was constructed in 1939, by the CCC. *The BLM apparently never acquired easements across private lands crossed by the road.* In 1970, we were notified by Big Horn County that the lower portion of road crossing Section 1, T. 52N., R. 91 W. had been a county road since 1921. The county indicated they maintained the portion of the road in Section 1.

After crossing the private land in Section 1, the road travels over approximately eight miles of public land prior to entering private land. *We have no records indicating that the BLM ever acquired easements on the road above this point. As such, we consider the road a public road to the point in Section 36, T. 53N., R. 90 W., where the road enters private land.* We consider most roads crossing public land to be public roads, open to use by the public. This assumes that the involved piece of public land is accessible to the public and not land locked by private land or physical barrier....

*There is no institutional knowledge of any significant road maintenance being accomplished on the road,* although if funds permitted, we would certainly maintain the road as necessary. The road is identified by the BLM as Black Mountain Road, #1115.

(Emphasis added.)

[¶ 25] This letter strongly corroborated other evidence that only a portion of

Black Mountain Road was open to the public and even the federal government recognized and respected the rights of the private owners along the remainder of the road. Ownership of property implies the right of possession and control and includes the right to exclude others; that is, a true owner of land exercises full dominion and control over the land and possesses the right to expel trespassers. *Sammons v. American Automobile Association*, 912 P.2d 1103, 1105 (Wyo.1996) (citing *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 82, 100 S.Ct. 2035, 2041, 64 L.Ed.2d 741 (1980)).

[¶ 26] The logical result of Mr. Mayland's argument is, an applicant could be required to accomplish detailed title searches, legal analyses of ownership interests, and even, possibly, quiet title actions to prove alternative public access exists. We have noted "that the legislature intended the procedure under the statute [§ 24–9–101] to provide in a local forum a readily available, economically affordable, and time efficient method to obtain a means of access to property." *Martens*, 954 P.2d at 380. We have further held "that there is no requirement in § 24–9–101 that a petitioner for a private road must overcome every obstacle standing in his way, regardless of the expense and impracticability." *Miller*, 4 P.3d at 887. Mr. Mayland's proposition is inapposite to our jurisprudence and advocates the adoption of an economically prohibitive and logistically maladroit standard of proof. We decline to adopt such a standard.

[¶ 27] Mr. Mayland takes particular issue with the portion of Finding No. 9 which states:

9. The records of the Big Horn County Clerk and Recorder in Basin, Wyoming, do not reflect any easements, rights of passage, or other methods by which [Mr. Flitner] has any legally enforceable access upon, over and across the Black Mountain Road at the will of [Mr. Flitner].

It is unclear from a review of the record if Finding No. 9 was based on administrative notice of judicially cognizable facts or a compilation of the testimony and evidence. If it was based on administrative notice, pursuant to Wyo. Stat. Ann. § 16–3–108(d) (LexisNex-

is 2001), the parties should have been noticed and provided an opportunity to contest. Regardless, this portion of Finding No. 9 can be disregarded without impairing the integrity of the rest of the finding.

[¶ 28] The County Commissioners and parties together traveled both Mayland/Snowshoe Pass Road and Black Mountain Road. The County Commissioners had an ability to personally view the two currently existing routes. Substantial evidence elicited during the hearings established Black Mountain Road was not a consistently viable route of access to Mr. Flitner's property. It was in poor condition and, as reflected in the BLM letter, had not been consistently maintained. Furthermore, intervening private property interests limited accessibility. For these reasons, we conclude substantial evidence supported the County Commissioners' Findings Nos. 7 through 12 (disregarding that portion of Finding No. 9 as discussed above) and specifically the finding that the requested access over Mayland/Snowshoe Pass Road was "necessary." Likewise, Conclusions of Law Nos. 1, 3, and 4, based upon the findings, are supported by substantial evidence.

## B. Propriety of County Commissioners' March 4, 1997, "Executive Session"

[¶ 29] Mr. Mayland also objects the County Commissioners went into "executive session" on March 4, 1997, with the county attorney to discuss the private road application and, as reflected in the minutes, instructed the county attorney to prepare findings of fact and conclusions of law prior to the County Commissioners making a final decision. He asserts such action violates the Public Meetings Act, Wyo. Stat. Ann. §§ 16–4–401 to –407 (LexisNexis 2001), and denied him due process by preventing him from being present during the County Commissioners' deliberations.

[¶ 30] Pursuant to § 16–4–403(a):

(a) All meetings of the governing body of an agency are public meetings, open to the public at all times, except as otherwise provided. No action of a governing body of an agency shall be taken except during a

public meeting following notice of the meeting in accordance with this act. Action taken at a meeting not in conformity with this act is null and void and not merely voidable.

It goes without saying the meeting of the County Commissioners was that of a governing body. Also, the stated purpose of the executive session was the discussion of the private road application and is not covered by any of the § 16–4–405 exceptions. Thus, we are confronted with the question: What action, if any, taken at that meeting is void as provided in § 16–4–403(a)? *Ward v. Board of Trustees of Goshen County School District No. 1*, 865 P.2d 618, 621 (Wyo.1993). We have held that "agencies may hold informal meetings for informational purposes so long as no action is taken at them." 865 P.2d at 621–22 (citing *Emery v. City of Rawlins*, 596 P.2d 675, 679 (Wyo.1979)).

[¶ 31] The record contains no evidence a vote was taken during the March 4, 1997, "executive session" or any specific decision resulted. The only outcome of the meeting appears to be that the county attorney was instructed to prepare findings of fact and conclusions of law **prior to** the County Commissioners making an order. So, although it was inappropriate for an executive session to be called regarding the private road application, the County Commissioners took no action that can be considered void. Also, it is worth noting the Findings of Fact and Conclusions of Law were later signed by all the commissioners at a June 17, 1997, public meeting. They were also officially adopted at a public meeting on February 1, 2000, as reflected in the Order Adopting Report of Appraisers and Establishing Private Road which the January 18, 2000, hearing transcript indicates was based on the proposed order prepared by Mr. Mayland's counsel.

We conclude the Public Meetings Act requirements were met when the County Commissioners took action.

## C. Assessment of Damages by the Appraisers

[¶ 32] The appraisers/viewers (appraisers) received legal instructions on the manner in which they were to determine the damages. These instructions were "a blend of the law from the private taking and eminent domain cases." Mr. Mayland specifically requested an instruction be given that included the eminent domain compensation standard of Wyo. Stat. Ann. § 1–26–702(b) (LexisNexis 2001):

> (b) If there is a partial taking of property, the measure of compensation is the greater of the value of the property rights taken or the amount by which the fair market value of the entire property immediately before the taking exceeds the fair market value of the remainder immediately after the taking.[1]

The instruction was given to the appraisers on two separate occasions.[2] Mr. Mayland now contends the appraisers' final conclusion was invalid because it failed to properly set out the before and after values as required by *Lindt* for private road applications. To resolve this issue, we must determine whether the appraisers applied the proper compensation formula and whether there actually is a difference between the compensation formulas of the private road and the eminent domain statutes.

[¶ 33] The private road and eminent domain statutes find a common genesis in Article 1, Sections 32 and 33 of the Wyoming Constitution. Sections 24–9–101 to –104; Wyo. Stat. Ann. §§ 1–26–501 to –815 (LexisNexis 2001). Article 1, Section 32 (emphasis

---

1. Respondent's Memorandum Regarding Standards and Recommendations for Appraisal and Appraisal Instructions dated September 10, 1998, states in pertinent part:

 Pursuant to provisions of Wyoming Statutes applying to eminent domain, the landowner, Mayland, whose property is subject to a partial taking is entitled to prove not only the difference between the fair market value of the property prior to the taking and the fair market value of the remainder after the taking, the

 before and after rule, but he is also entitled to prove the value of the property rights taken. The measure of compensation is the greater of those alternative amounts.

 We note Mr. Flitner also took the position the eminent domain damage formula was applicable.

2. The instruction was given the first time at a September 14, 1998, instruction hearing and again at the conclusion of the damages hearing on September 27, 1999.

added) mandates that "Private property shall not be taken ... without *due compensation.*" [3] Article 1, Section 33 (emphasis added) provides that "Private property shall not be taken ... without *just compensation.*" [4] This court has previously determined the concepts of *due* and *just* compensation mean:

"[A]n equivalent in money for all property taken." *Wyoming State. Highway Commission v. Scrivner,* [641 P.2d 735 (Wyo. 1982) ]; *Wyoming Railway Company v. Leiter,* 25 Wyo. 286, 290, 169 P. 1, 2 (1917). It is the value of property at the time acquired and that means full value; regardless of how such value is reached, it must be fair to the condemnor as well as the owner of the property taken. This has been expressed in judicial declarations that the compensation paid should be the "market value," or sometimes stated, the "fair market value," "cash market value," "fair cash market value," or "reasonable cash market value." Regardless of the label, embellished one way or the other, market value seems to be the most frequently applied tool to reach just compensation. 4 Nichols on Eminent Domain, § 12.1 3rd ed. 1981.

*Coronado Oil Company v. Grieves,* 642 P.2d 423, 433 (Wyo.1982). No difference in meaning exists between the terms "due compensation" and "just compensation."

[¶ 34] Despite their common genesis, we have held private road applications and eminent domain condemnations are completely separate procedural remedies arising under distinct and unrelated statutes. *Coronado Oil Company v. Grieves,* 603 P.2d 406, 412 (Wyo.1979). The question remains whether these two discrete yet "consistent cumulative remedies" result in the same formula for computation of just compensation. *Id.* We conclude the answer must be in the affirmative.

[¶ 35] In 1995 when the Flitner private road application was filed, § 24–9–101 (emphasis added) provided for damages in relevant part as follows:

Any person whose land has no outlet to, nor connection with a public road, may apply in writing to the board of county commissioners of his county for a private road leading from his premises to some convenient public road.... [I]f the board finds that the applicant has complied with the law and that the private road is necessary, the board shall appoint three (3) disinterested freeholders and electors of the county, as viewers and appraisers, and shall cause an order to be issued directing them to meet on a day named in the order on the proposed road, and view and locate a private road according to the application therefor, *and to assess damages to be sustained thereby....* The viewers shall then proceed to locate and mark out a private road in accordance with the application or in such other manner and location they deem appropriate .... The proposed road ... shall be located so as to do the least possible damage to the lands through which the private road is located.

The extent of the "damages" authorized by § 24–9–101 is controlled by the constitutional mandate of Article 1, Sections 32 and 33 of the Wyoming Constitution. Therefore, in the context of this specific statute, the word "damages" must be synonymous with the concept of just compensation. This provision was interpreted in *Lindt* and reemphasized in *Miller,* 4 P.3d at 888–89, approximately three months after the County Commissioners' decision in this matter to require:

[A]ny damages must be assessed in accordance with *Lindt v. Murray,* 895 P.2d 459, 463 (Wyo.1995). That is, the viewers and appraisers must: first, determine the value of the property over which the road crosses before the private road is established;

3.

§ 32. **Eminent domain.**
Private property shall not be taken for private use unless by consent of the owner, except for private ways of necessity, and for reservoirs, drains, flumes or ditches on or across the lands of others for agricultural, mining, milling, domestic or sanitary purposes, nor in any case without due compensation.

Wyo. Const. art. 1, § 32.

4.

§ 33. **Compensation for property taken.**
Private property shall not be taken or damaged for public or private use without just compensation.

Wyo. Const. art. 1, § 33.

second, determine the value of the property over which the road crosses after the private road is established; and third, subtract the "after" value from the "before" value, which equals the damages due the owners of land over which the road crosses. In applying this formula, the viewers and appraisers are to determine the "before" and "after" value only of those lands over which the private road crosses; not, as the Burkhalters argue, the "before" and "after" value of all surrounding lands affected by the proposed road.

[¶ 36] During the 2000 legislative session, § 24–9–101 was amended to incorporate the before and after test:

> (j) In determining any damages to be suffered by the owner or owners of the lands through which the access shall be provided, the viewers and appraisers shall appraise the value of the property before and after the road is in place. Damages also may include reasonable compensation for any improvements on the lands over which any private road is to be granted which were not paid for and will be used by the applicant.

Wyo. Stat. Ann. § 24–9–101(j) (LEXIS 2000). In contrast, the eminent domain statute applicable to compensation for a partial taking reads as follows:

> (b) If there is a partial taking of property, the measure of compensation *is the greater of the value of the property rights taken* or *the amount by which the fair market value of the entire property immediately before the taking exceeds the fair market value of the remainder immediately after the taking.*

Section 1–26–702(b) (emphasis added). At first glance, it would appear the statutory provisions supply different formulas for computation of just compensation. However, on closer examination, we conclude the valuation factors and ultimate computations are the same. Both statutes contemplate partial takings of property—not entire takings. Both also provide the "before and after" test. The only distinction is that § 1–26–702(b) also provides the damages are either "the greater of the value of the property rights taken or" the result of the "before and after" test.

[¶ 37] The phrase "the greater of the value of the property rights taken" is a codification of the "severance damage rule."

The severance damage rule is stated as measuring the value of the part taken (recognizing its value as a part of a whole) plus those damages occasioned to the remainder (measuring its pre–taking value as a part of a whole). Under this attempt to evaluate compensation, the trier seeks to value the number of acres in fact taken, including such improvements as they existed in the pre–taking condition as part of an entire tract and then adding to that, those specific, provable damages occasioned to the remainder by the taking, again treating the remainder as it existed prior to the taking, *i.e.,* as part of an entire tract.

4A Julius L. Sackman & Patrick J. Rohan, Nichols' The Law of Eminent Domain § 14.02[1][c] (3d ed. 1994).[5]

[¶ 38] If properly done, the before and after valuation appraisals should capture and reflect any severance damages. For this reason, the severance damage clause of the eminent domain compensation formula is, at best, superfluous. At worst, it raises constitutional questions if it purports to provide more "just compensation" to the eminent domain condemnee than § 24–9–101 provides to a similarly situated person in the private road context. In this regard, we find the following reasoning exceedingly persuasive:

> "It is incorrect to think of 'severance damage' as a separate and distinct item of just compensation apart from the differ-

---

5. Much has been written about severance damages allowing for duplication of damages and overpayment to the condemnee as well as concern that certain aspects of damages are missed by the "before and after" standard. *State Highway Commission v. Scrivner,* 641 P.2d 735 (Wyo. 1982), contemplates that before and after appraisals necessarily incorporate severance damages. 4A Sackman & Rohan, *supra;* Randall T.

Cox, Easements, Access & Eminent Domain at 45–54, 144–150 (2d ed. 2001). Under our eminent domain statute, the "greater than" language prevents any duplication. Further, a properly done appraisal should consider the value of all property rights taken allowing the owners of land over which a private road is sought to argue that the value of any damage to their property should be considered in the "before and after" values.

ence between the market value of the entire tract immediately before the taking and the market value of the remainder immediately after the taking. In the case of a partial taking, if the 'before and after' measure of compensation is properly submitted to the jury [or in the present case, considered by the commission], there is no occasion for the lawyers or the trial court to talk about 'severance damage' as such, *and indeed it may be confusing to do so. The matter is taken care of automatically in the 'before and after' submission.*"

*United States v. 9.20 Acres of Land, More or Less, Situate in Polk County, State of Iowa,* 638 F.2d 1123, 1127 (8th Cir.1981) (quoting *United States v. 91.90 Acres of Land,* 586 F.2d 79, 86 (8th Cir.1978) (citations omitted)).

 [¶ 39] The relationships between the concepts of "just compensation," "fair market value," the "before and after test," and "severance damages" were considered by this court in *State Highway Commission v. Scrivner,* 641 P.2d 735, 737–38 (Wyo.1982) (some citations omitted), as follows:

> The taking of private property by the State is permitted by the Wyoming Constitution so long as "just compensation" is paid. Article 1, § 33, Wyoming Constitution. . . .
>
> In Wyoming [just compensation] has been described as "an equivalent in money for all property taken." *Wyoming Railway Company v. Leiter,* 25 Wyo. 286, 169 P. 1, 2 (1917). Elsewhere it has been similarly described; where property is taken, the State must pay the fair market value of that property.
>
> Thus the conclusion which follows is that "just compensation" is only for the fair market value of the property or property right lost or taken. Compensation for the owner's personal loss is not allowable.
>
> However, the question remains as to what are the proper considerations in determining the fair market value when only a portion of an owner's property is taken. In Wyoming the law is that the proper measure of damages in such instances is the difference between the fair market val-

ue of the owner's land before the taking and the value of the remainder after the taking. It consists of two elements: The value of the land actually taken and the amount in money by which the remainder is reduced in value as a result of the partial taking (severance damage).

In *Scrivner,* this court found before and after appraisals necessarily incorporate severance damages. In other words, just compensation equals the fair market value of all property rights lost or taken, measured by the difference between the fair market value of the property before the taking and of the remainder after the taking. On this authority, we conclude the language of § 1–26–702(b) establishes the same standard as the "before and after test" enunciated in *Lindt,* emphasized in *Miller,* and codified in § 24–9–101 by the 2000 legislature. So long as it is clear from the record the County Commissioners fully compensated Mr. Mayland for the difference in the values of his land before and after the taking, their action must be sustained.

[¶ 40] The appraisers made an on-site inspection and attended two days of evidentiary hearings. The evidence included lengthy testimony from Mr. Mayland's expert appraiser regarding the appraisal he conducted which formed the basis of his before and after valuations. He concluded the property sustained a $231,000 total loss in value. This figure included a seven percent value reduction,[6] monies to compensate for the cost of a reservoir/water system allegedly made necessary by the road, and a per acre sum for the actual road itself. Mr. Flitner's expert appraiser also testified extensively regarding the review appraisal she conducted, her criticisms of the Mayland appraisal, and her calculation of the before and after difference in value of $2,716. She testified the seven percent value reduction and the per acre sum for the road resulted in duplicative damages for the 6.39 acres taken by the thirty–foot right–of–way.

[¶ 41] On December 1, 1999, the appraisers submitted notice of their decision to the County Commissioners. It reflected in relevant part:

---

**6.** Computed on Mr. Mayland's expert's property appraisal "before value" of $2,800,000.

Consideration was given to instruction 1, 1a, 2, 3, 4, 4a, 5 and 6 in determining the final appraisal of damages as claimed by Mayland. Further consideration was given to the testimony of Martin R. Mayland, David A[.] Flitner, [Mr. Mayland's expert appraiser] and [Mr. Flitner's expert appraiser].

. . . .

Any necessary access improvements and road maintenance, to include, but not limited to, water bars, ditching, grading, pot hole filling become the obligation of petitioner, David A. Flitner, both physically and monetarily. All gates, locks and or cattle guards become the obligation of the petitioner along with maintenance. Those said improvements shall become the property of the respondent, Martin R. Mayland.

In conclusion, it is the determination of the appraisers that the petitioner, David A. Flitner, is obligated to the respondent, Martin R. Mayland, in the amount of $15,272.00 which includes $5,272.00 remuneration for perpetual taking which is 6.39 acres valued at $825.00 per acre and to include $10,000.00 damages.

[¶ 42] The excerpt reveals the appraisers adopted Mr. Mayland's per acre value of $825 reflecting the highest and best use of the property was recreation as opposed to agriculture. They also determined the property incurred an additional $10,000 in damage. We conclude the appraisers made a reasonable inference from the evidence that Mr. Mayland's "before" property value was diminished by the taking in the amount of the actual value of the road acreage and the additional $10,000. An inference is a deduction of fact which may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action. *Roussalis v. Wyoming Medical Cen-* *ter, Inc.,* 4 P.3d 209, 229 (Wyo.2000); *Whipple v. Northern Wyoming Community College Foundation of Sheridan (Estate of Roosa),* 753 P.2d 1028, 1034 (Wyo.1988).

[¶ 43] It would serve no valid purpose to remand this matter and require the appraisers to provide "before and after" values which would simply reflect the value difference in the amount of the damages already determined. The decision was sufficient under the instruction the appraisers were given. No place in the record does it reflect that the appraisers were informed they were required to show the before and after values in their decision in any particular form. Instead, they were instructed to make a determination and assess the damages accordingly. We believe they followed the instructions they were given to the best of their ability.

[¶ 44] As a general rule, parties are bound by the theories they advanced below. *Ricci v. New Hampshire Insurance Company,* 721 P.2d 1081, 1088 (Wyo.1986). The "invited error" doctrine provides, if a party requests or moves the court to make a ruling which is actually erroneous and the court does so, that party cannot take advantage of the error on appeal or review. *Blumhagen v. State,* 11 P.3d 889, 895 (Wyo.2000); *Schott v. State,* 864 P.2d 38, 39 (Wyo.1993). On this basis, we hold Mr. Mayland to the infirmities of his instruction to the extent it failed to advise the appraisers to specifically set out the before and after values separately. For these reasons, we affirm the appraisers' damages determination as adopted by the County Commissioners. In the interest of clarity, instructions to appraisers in these matters should provide direction to set out the before and after values of the impacted property as well as the factors affecting those values.[7]

7. In *Miller,* 4 P.3d at 888, the Millers alleged § 24–9–101 notice must be given to all surrounding property owners affected by the grant of a private road and damages should be assessed for all affected properties regardless of whether the road crosses over such properties. This court held that the statute only requires notice to owners of land over which the private road is applied for, not to all surrounding landowners who might be affected. Therefore, the court clarified that damages should be assessed only for the lands over which the road crosses, not for all surrounding affected properties. This does not, however, alter computation of damage for the property or properties over which the road crosses. The before and after valuations should consider the entire property, not just the segregated acreage consumed by the road.

## D. Interest as Damages

[¶ 45] Mr. Mayland claims he is entitled to interest on the damages awarded from the date of entry of the temporary restraining order by the district court. That order essentially granted Mr. Flitner continued access to Mayland/Snowshoe Pass Road from the summer of 1995 through the conclusion of the private road application process. At the January 18, 2000, objection hearing, Mr. Mayland specifically requested the County Commissioners award interest on the damages and incorporated such language in his proposed Order Adopting Report of Appraisers and Establishing Private Road. The County Commissioners rejected this proposal and struck the interest provision from the order as executed on February 1, 2000.[8]

[¶ 46] Mr. Mayland argues interest is appropriate pursuant to the law of eminent domain and Wyo. Stat. Ann. § 1–16–102 (LexisNexis 2001) as post–judgment interest. The eminent domain statutes provide a separate and distinct remedy from the private road application process. *Coronado Oil Company*, 603 P.2d at 412. Section 1–16–102 is inapplicable because it applies to final judgments by the courts and, even if it arguably applies to county action, Mr. Flitner immediately paid upon issuance of the County Commissioners' final order. If Mr. Mayland's argument is that the statute should apply upon issuance of the temporary restraining order, such an order is not a "final determination of the rights of the parties in [an] action." W.R.C.P. 54(a).

[¶ 47] Further, the County Commissioners only have authority to award damages caused by their creation of a private road. Sections 24–9–101 to –104. The statute provides no authority for the county to include in its "damages" calculation alleged additional damages caused by a preceding temporary restraining order issued by the district court.

> As a creature of the legislature, an administrative agency has only the powers granted to it by statute, and the justification for the exercise of any authority by the agency must be found within the applicable statute. *Montana Dakota Utilities Co. v. Public Service Commission of Wyoming*, 847 P.2d 978, 983 (Wyo.1993). A statute will be strictly construed when determining the authority granted to an agency. *Id.* "Any agency decision that falls outside the confines of the statutory guidelines articulated by the legislature is contrary to law and cannot stand." *Tri County Telephone Association, Inc. v. Wyoming Public Service Commission*, 910 P.2d 1359, 1361 (Wyo. 1996). In other words, reasonable doubt of the existence of a power must be resolved against the exercise thereof. A doubtful power does not exist. *French v. Amax Coal West*, 960 P.2d 1023, 1027 (Wyo.1998).

*LePage v. State, Department of Health*, 2001 WY 26, ¶ 13, 18 P.3d 1177, ¶ 13 (Wyo.2001).

[¶ 48] The record contains no information concerning whether Mr. Mayland sought interest from the district court as an element of damage caused by the temporary restraining order proceeding. "Interest is allowed in some cases by courts of equity when it would not be recoverable at law, and in such cases it is allowed or refused by the court in the exercise of a sound discretion." 25 C.J.S. *Damages* § 54 at 806 (1966). Any action or inaction by the district court was not raised as an issue on appeal.

[¶ 49] We conclude the County Commissioners acted within the scope of their statutory authority in denying the request for interest.

[¶ 50] Affirmed.

---

8. The order reflects the County Commissioners struck the interest provision by hand-delineation and initialed the change.