**Peter A. KAISER, Sr., Appellant (Plaintiff),**

v.

**FARNSWORTH DRILLING, CO., INC., a Wyoming corporation, Michael Farnsworth, Gerald G. Farnsworth, and Thomas Farnsworth, William C. Naramore, Jack L. Bennick, Ronald J. Pasco, John C. Cromwell, Jessie E. Braley, David Clift, and various John Does, Appellees (Defendants).**

**No. 92–189.**

Supreme Court of Wyoming.

May 11, 1993.

Bernard E. Cole and Donald A. Cole, Cheyenne, for appellant.

Stanley S. Sheehan and Randall T. Cox of Sheehan & Cox, Gillette, for appellees Farnsworths.

Before THOMAS, CARDINE and TAYLOR, JJ., ROONEY, J. (RET.), and LANGDON, D.J. (RET.)

LANGDON, District Judge (Retired).

In this appeal, we determine whether the district court properly granted a motion to dismiss the appellant's complaint, as was provided for in Wyo.R.Civ.P. 41(b) (now Wyo.R.Civ.P. 52(c)), for the reason that, upon the facts and the law, the appellant demonstrated no right to relief. Associated issues of jurisdiction, res judicata, and statute of limitations are also posited before the Court, but, because we will hold that the district court properly dismissed the complaint, we find it unnecessary to address those questions.

The appellant, Peter A. Kaiser, Sr., states this issue:

> Did the District Court err in holding that the Appellant's Complaint should be involuntarily dismissed pursuant to Rule 41(b) of the Wyoming Rules of Civil Procedure on the ground that upon the facts and the law the Appellant had shown no right to relief?

The appellees, Farnsworth Drilling Co., Inc., Michael Farnsworth, Gerald G. Farnsworth, and Thomas Farnsworth, provide this statement of the issues:

> There are two issues presented in this case, one of which is appropriately stated by the Appellant. The second issue is stated as follows:

> > Whether the District Court had jurisdiction to hear a complaint seeking to modify a series of Probate Court Or-

ders entered more than four years prior to the filing of the complaint.

This case really began on January 16, 1984, when the district court appointed a guardian for Kaiser, who was an incompetent because of advanced chemical dependency which rendered him incapable of caring for himself or his property. At the time the guardian was appointed, Kaiser's estate was valued at over $4.5 million, and his stock in Farnsworth and Kaiser Drilling Company, Inc. (F & K Drilling), which represented one-half of the stock of that corporation, was valued at $1.5 million. The other one-half of the stock in F & K Drilling was owned by Gerald G. Farnsworth, and he and Kaiser jointly operated the company. In early 1985, it became necessary to sell Kaiser's F & K Drilling stock in order to service a $1.5 million debt owed by Kaiser to the National Bank of Newcastle. David Clift,[1] Vice–President and Trust Officer of the Stockmens Bank & Trust Company of Gillette, Wyoming, acting as the guardian for Kaiser, arranged for Nelson International to make an appraisal of the equipment owned by F & K Drilling and then advertised the stock for sale. Michael and Thomas Farnsworth, Gerald G. Farnsworth's sons, offered to buy the stock, and they arranged for their own independent appraisal to be made by Jim Davis Auctioneers.[2] Kaiser was present at the sale and was represented by an attorney who was serving as his guardian ad litem as well as by his guardian. The guardian received no other offers to buy the stock, and he sold it to the Farnsworth brothers for $814,000, an average of the two appraisals, in a district court approved sale. On August 14, 1986, the guardianship was terminated. On August 7, 1989, Kaiser filed a complaint alleging that the Farnsworths conspired with each other to deprive Kaiser of his share of the true value of F & K Drilling. He maintained that they achieved this by concealing and/or undervaluing many corporation assets. Kaiser also alleged that the Farnsworths misrepresented and con-

cealed F & K Drilling assets which enabled Michael and Thomas Farnsworth to obtain Kaiser's stock at an artificially low price. In addition, Kaiser alleged that Clift violated his fiduciary duties to Kaiser and sold assets from his estate at prices greatly less than they were worth.

A trial to the court was conducted on July 10, 1992. At that trial, Kaiser presented all his evidence in support of his various claims. That evidence primarily consisted of his own testimony and related documentary evidence. The district court also took judicial notice of the entirety of the proceedings in the matter of Kaiser's guardianship. At the close of Kaiser's presentation of evidence, the defendants moved for a dismissal in accordance with Wyo.R.Civ.P. 41(b), asserting that, upon the facts and the law, Kaiser failed to show a right to relief. Kaiser's evidence consisted of a hypothesis not dissimilar to basing a claim on the theory of res ipsa loquitur. At the time Kaiser's guardianship was created, his estate was inventoried and appraised. One item in that inventory was his F & K Drilling stock, and it was valued at $1.5 million. Of course, that would mean all the stock in F & K Drilling had a total value of $3 million. At the time Kaiser's F & K Drilling stock was sold, just about one year later, the F & K Drilling stock was valued at just over $1 million. This figure is, however, somewhat deceptive. Kaiser received $523,000 for the stock itself, $291,000 in undistributed cash reserves, and forgiveness of debt of about $340,000. Gerald G. Farnsworth also received a cash distribution of $291,000 and forgiveness of debt of approximately $340,-000, but he retained his stock. If these figures were added together, the total value of the F & K Drilling stock at that time would have been about $2,308,000, or $692,-000 less than the $3 million value placed upon it at the time the guardianship commenced. Thus, it could be reasoned that

---

**1.** Clift is an appellee in this appeal. He appeared pro se below but did not file a brief in this Court.

**2.** The real estate owned by F & K Drilling was separately appraised at approximately $200,000. There is no controversy concerning the appraised value of the real estate.

Kaiser's stock deteriorated in value by about $346,000.

Kaiser's evidence of conspiracy and misrepresentation consisted of his assessment that the two appraisals were not congruous. Each contained items of property that the other did not, though each appraisal did contain general categories of "stuff." For instance, the Nelson International appraisal had this item: "Approximately 150 Tons of Iron Including Engines, Pumps, Rig Parts & Masts," and the Jim Davis appraisal listed: "120–150 tons of scrap metal." Kaiser presented three lists to the district court. One list consisted of items appearing in the Nelson International appraisal which were not in the Jim Davis appraisal. The second list consisted of items which appeared in the Jim Davis appraisal, but not in the Nelson International appraisal. The third list consisted of items which did not appear in either appraisal but were in the F & K Drilling yard both before and after the appraisals were completed. The proceedings transcript establishes that these lists contained many inaccuracies. Kaiser also testified that he called this to Clift's attention at the time of the sale but that Clift went ahead with the sale anyway. He also stated that he called it to Gerald G. Farnsworth's attention and that Farnsworth wanted the sale to proceed and would pay Kaiser for the "missing equipment down the road." On the basis of this evidence, Kaiser contended it should be concluded that the Farnsworths conspired in such a way as to obtain his stock at a reduced price. Kaiser admitted quite frankly that he had no evidence of such a conspiracy other than his three lists. Kaiser also contended that it should be concluded that the Farnsworths had misrepresented and/or concealed the F & K Drilling assets so as to obtain his stock at a reduced price. Again, Kaiser candidly admitted that he had no evidence of such misrepresentations and/or concealments other than his three lists.

The standard of review to be applied in this case is:

Essentially, this court applies a directed verdict analysis, taking the plaintiff's evidence as true and affording it all favorable and reasonable inferences. " 'A motion for judgment at the close of the plaintiff's case is in the nature of a demurrer to the evidence, and admits its truth.' " This court ... clarified this issue of involuntary nonsuit:

"Where the plaintiff's proof has failed in some aspect, the motion should be granted—where the plaintiff's proof is overwhelming, the motion should be denied. Where the plaintiff has presented a prima facie case based on unimpeached evidence, the trial judge should not grant the motion even though the judge himself may feel that the plaintiff has not sustained his burden of proof."

*True Oil Company v. Sinclair Oil Corporation*, 771 P.2d 781, 795 (Wyo.1989) (citations omitted). *See also Charter Thrift and Loan v. Cooke*, 766 P.2d 522 (Wyo. 1988), and 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2371 (1971).

■ The district court issued findings of fact and, in our view, correctly determined that Kaiser presented no evidence of a conspiracy. While the existence of concerted action may not have made that much difference to the outcome of this case, we are nonetheless satisfied with the district court's conclusion that no evidence of concerted action was introduced before the trial court. *See Jurkovich v. Estate of Tomlinson*, 843 P.2d 1166 (Wyo.1992); *Barnhart Drilling Co., Inc. v. Petroleum Financing, Inc.*, 807 P.2d 411 (Wyo.1991); and 16 AM.JUR.2D *Conspiracy* §§ 49–52 (1979).

■ We move on to Kaiser's evidence concerning misrepresentations and/or concealment of assets in furtherance of the Farnsworths' alleged attempt to obtain Kaiser's stock at a reduced price. The district court found that the Farnsworths did not conceal F & K Drilling assets nor did they misrepresent those assets to the appraisers or anyone else. We agree that Kaiser presented no evidence from which misrepresentation, concealment, or fraud might be inferred. The facts presented by Kaiser did not go beyond a demonstration

that there was an apparent drop in the value of F & K Drilling stock between 1984 and 1985. The record suggests that the loss in value might have been the result of market conditions in the oil and gas drilling industry; that it might have been the result of Kaiser dropping out of the closely held corporation which depended upon Kaiser and Gerald G. Farnsworth for both management and actual operations; that it might have been because the 1984 appraisal of the F & K Drilling stock was more in the nature of a guesstimate than a studied appraisal as was made in 1985; or that it might have been that Kaiser had an inflated opinion of the value of F & K Drilling assets. There was insufficient evidence to establish any or all of these factors as being the cause of the stock's lower value, but more importantly there was no evidence whatsoever that misrepresentations concerning, or concealment of, assets was the cause. *See Duffy v. Brown,* 708 P.2d 433 (Wyo.1985); and *Sullivan v. Sullivan,* 506 P.2d 813 (Wyo.1973).

Finally, we address Kaiser's evidence that Clift breached his fiduciary duties as a guardian of Kaiser's estate and sold assets from that estate for substantially less than their appraised value. The district court found no evidence of a breach of fiduciary duties or that Clift sold estate assets for substantially less than their appraised value. The duties owed Kaiser by Clift are dictated by statute. WYO.STAT. § 3-2-201 (1985). Clift had authority to sell his ward's personal property, and that sale had to be reasonable. The sale of the F & K Drilling stock was accomplished with district court authorization and approval. On its face, and that is the only real evidence we have to consider, the sale was proper. There simply is no evidence indicating that Clift breached his duties as a guardian or sold assets from Kaiser's estate in a manner inconsistent with those duties.

The appellees posit an argument that the district court lacked jurisdiction to entertain Kaiser's complaint. They contend that the issues were res judicata because of the guardianship proceedings and that there was no vehicle available, under either the rules of civil procedure or governing statutes, which permitted the court to entertain this collateral proceeding. We are satisfied that our disposition of the case settles this matter on its merits and that detailed consideration of these jurisdictional issues would not contribute to resolution of this matter or enhance the jurisprudence of this state. The district court had jurisdiction of the subject matter and the parties, and we, thus, find it unnecessary to comment further in this regard.

The district court's judgment is affirmed.