2004 WY 107

David VEILE, Appellant (Petitioner),

v.

Michael BRYANT and The Bryant Funeral Home, Inc., Appellees (Respondents).

No. 03–186.

Supreme Court of Wyoming.

Sept. 14, 2004.

Representing Appellant: Bill G. Hibbler, Cheyenne, Wyoming.

Representing Appellees: Michael Bryant, Pro se.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] David Veile filed with the Board of Embalmers (Board) a petition to revoke Michael Bryant's funeral license alleging Mr. Bryant violated certain statutes and regulations governing funeral home directors. After Mr. Veile presented his evidence at a hearing, the Board granted Mr. Bryant's motion for a directed verdict and Mr. Veile filed a petition for review with the district court. The district court denied the petition finding the Board's decision was not subject to review and Mr. Veile timely appealed to this Court. We reverse the district court's denial of the petition and find the Board's decision was subject to review and we affirm the Board's order.

## ISSUES

[¶ 2] The issues presented by Mr. Veile are:

I. Whether the proceeding held before the Wyoming State Board of Embalming was a contested case, pursuant to the Wyoming Administrative Procedure Act, Wyo. Stat. §§ 16–3–101 et seq.?

II. Whether the decision entered by the Wyoming State Board of Embalming, pursuant to Wyo.R.Civ.P. 52(c), is arbitrary and capricious (Wyo.Stat. § 16–3–114(c)(ii)(A))?

III. Whether the action of the Wyoming State Board of Embalming requiring appellant Veile, a private citizen, to prosecute a professional licensing disciplinary case is contrary to law (Wyo.Stat. § 16–3–114(c)(ii)(A), (C) and/or (D))?

IV. Whether the decision entered by the Wyoming State Board of Embalming violates Wyo. Stat. § 16–3–110?

V. Whether the Wyoming State Board of Embalming is a necessary party to this appeal of its decision and action?

[¶ 3] Mr. Bryant rephrases the issues as follows:

I. Whether the proceeding held before the Wyoming State Board of Embalming was a contested case proceeding pursuant to Wyo. Stat. § 16–3–101 *et seq.*

II. Whether the decision entered by the Wyoming State Board of Embalming was reasonable and rational based upon all the evidence before it.

III. Whether the decision of the Wyoming State Board of Embalming violates Wyo. Stat. § 16–3–110.

IV. Whether Mr. Veile's decision to personally prosecute Michael Bryant and the Bryant Funeral Home, Inc., and the Wyoming State Board of Embalming's decision to allow the same, is an issue between Mr. Veile and the Wyoming State Board of Embalming, not Mr. Bryant or the Bryant Funeral Homes, Inc.

## FACTS

[¶ 4] Mr. Veile's family started Veile Mortuary in Worland, Wyoming in 1921. It was the only funeral home in Worland until Mr. Bryant opened Bryant Funeral Home, Inc. in 1995. In addition to owning his own funeral home, Mr. Bryant worked part-time as a deputy county coroner.

[¶ 5] In 1996, Mr. Veile filed a complaint with the Board against Mr. Bryant and Bryant Funeral Home alleging violations of Wyo. Stat. Ann. § 33–16–310(a)(ii)(A), (C), (D), (E), (N), (O) and/or (R) (LexisNexis 2003). In compliance with its rules, the Board assigned the complaint to an investigative committee and, ultimately, closed the case for lack of evidence of any violation by Mr. Bryant. On February 4, 1998, Mr. Veile filed a complaint with the Board for revocation or suspension of Mr. Bryant's license alleging Mr. Bryant had capped, steered and/or solicited funeral business in violation of § 33–16–310. Mr. Veile also filed a petition for writ of mandamus with the district court seeking to compel the Board to proceed with disciplinary action on the underlying complaints against Mr. Bryant which the Board had previously dismissed. The district court held the mandamus action in abeyance as a result of a stipulated agreement that the Board would re-investigate the initial allegations using an investigator chosen by Mr. Veile. At its January 2000 board meeting, after the investigation had been completed, the committee was prepared to make a recommendation to the Board. However, Mr. Veile attended the meeting and requested a private meeting with the committee so that he could provide them with new evidence against Mr. Bryant. The committee heard the new evidence, but before it could act, Mr. Veile filed suit against Mr. Bryant in federal court.[1] The federal court granted summary judgment in favor of Mr. Bryant and the case before the Board essentially started over.

[¶ 6] Mr. Veile filed a pleading entitled "Reassertion, Refiling and Supplement to Amended Petition for Revocation or Suspension of License and Complaint" on February 28, 2000.[2] On August 2, 2000, the Board notified Mr. Bryant that Mr. Veile had refiled his complaint alleging the same charges he alleged in 1998.[3] Mr. Bryant responded to the Board stating he was in full compliance with the requirements of his embalming and funeral director licenses and that Mr. Veile's accusations were "false, malicious, groundless, and should be dismissed." Mr. Bryant also claimed the issues raised by Mr. Veile had been raised previously and were dismissed by the Board as groundless. The Board referred the matter to the Office of Administrative Hearings (OAH). On December 29, 2000, Mr. Veile filed an amended petition for revocation or suspension with OAH alleging twenty-one specific violations by Mr. Bryant.[4] Mr. Veile alleged Mr.

---

1. Mr. Veile brought the federal court action under 42 U.S.C. § 1983, alleging the Washakie County Coroner, Gordon Martinson, and others, including Mr. Bryant, deprived Mr. Veile and Veile Mortuary of property and liberty interests without due process of law.

2. Although the record does not contain these "other complaints" filed by Mr. Veile, we can infer from the record that the allegations in the "other complaints" were similar to those currently asserted.

3. The reasserted petition was filed with the Board on February 28, 2000, two days before the terms of several Board members expired, which left the Board without a quorum for action. On August 16, 2000, after the Board vacancies were filled, the Board had a quorum and set the matter for hearing.

4. Specifically, Mr. Veile alleged Mr. Bryant violated § 33–16–310(a)(ii)(A), (C), (D), (E), (N), (O),

(Q) and/or (R). That statute states, in pertinent part:

**33–16–310. Rules and regulations; inspection; employment of inspector; notice and hearing for suspension or revocation of license generally; prohibited conduct; leasing of caskets.**
(a) The Wyoming state board of embalming shall have powers to adopt and enforce reasonable rules and regulations relating to the business of funeral directing, to the sanitary condition of places where such business or practice is conducted, with particular regard to plumbing, sewage, ventilation and equipment, and generally to carry out the various provisions of this act in the protection of the peace, health, safety, welfare and morals of the public. Said board shall have the power to inspect the premises in which the business of funeral directing is conducted or where embalming is practiced, and for that purpose may employ a licensed embalmer of the state of Wyoming as

Bryant capped, steered and/or solicited funeral business, and overcharged his customers contrary to his general price list, which is required by the Federal Trade Commission (FTC) rules.[5] The FTC rules require that providers of funeral goods and services provide customers with an itemized list of prices for described services to enable consumers to select and purchase only the goods and services they want, except for those required by law. Chapter 3, Sec. 7 of the Board's rules incorporates the FTC rules.

[¶ 7] After Mr. Veile filed his amended petition with OAH, the hearing examiner set the matter for hearing. Prior to the hearing, Mr. Bryant filed a motion for summary judgment, which was granted by the hearing examiner. Mr. Veile filed a petition for review with the district court, which certified the case to this Court. On November 20, 2001, this Court issued an order dismissing Mr. Veile's appeal for failure to exhaust administrative remedies because the Board had not acted on the OAH recommendation to grant the summary judgment motion and

remanded the matter back to the district court with instructions to remand it to the Board. Upon remand, the Board issued an order rejecting OAH's recommendation for summary judgment and again set the matter for hearing.

[¶ 8] OAH held a hearing on February 4, 5 and 6, 2002, which three of the five Board members attended. At the close of Mr. Veile's evidence, the Board granted Mr. Bryant's motion for a directed verdict finding Mr. Veile failed to provide sufficient evidence to support his allegations. Mr. Veile filed a petition for review with the district court, as well as a motion to join the Board as a party, and an appeal pursuant to Wyo. Stat. Ann. § 33–16–312 (LexisNexis 2003) requesting a trial de novo.[6] The district court denied the petition for review finding that Wyo. Stat. Ann. § 33–16–311 (LexisNexis 2003) permitted Mr. Veile to initiate a petition to revoke a license, but did not authorize him to prosecute the claim. The court held that when the Board receives a petition to revoke/suspend, it is obligated only to determine if there is a

an inspector and to aid in the enforcement of this act and rules adopted pursuant thereto, whose compensation and expenses shall be payable only out of the fees collected by the board. The board shall suspend or revoke licenses after hearing by said board and after ten (10) days notice to the licensee, upon such licensee being found guilty by said board of any of the following acts or omissions:
(ii) Unprofessional conduct which is hereby defined to include:
(A) Misrepresentation or fraud in the conduct of the business or the profession of a funeral director;
. . .
(C) Solicitation of human dead bodies by the licensee, his agents, assistants or employees, whether such solicitation occurs after death or while death is impending; provided, this shall not be deemed to prohibit general advertising;
(D) Employment by the licensee of persons known as cappers or steerers or solicitors, or other persons to obtain funeral directing or embalming business;
(E) Employment directly or indirectly of any apprentice agent, assistant, embalmer, employee, or other persons, on part or full time, or on commission, for the purpose of calling upon individuals or institutions by whose influence dead human bodies may be turned over to a particular funeral director or embalmer;
. . .
(N) Violation of any of the provisions of this act [§§ 33–16–301 through 33–16–317]'

(O) Violation of any state law or municipal or county ordinance or regulation affecting the handling, custody, care or transportation of dead human bodies;
. . .
(Q) Refusing to promptly surrender the custody of a dead human body, upon the express order of the person lawfully entitled to the custody thereof.
(R) Taking undue advantage of his patrons or being guilty of fraud or misrepresentation in the sale of merchandise to his patrons.

5. 16 C.F.R. § 435.2(4) (2003) states:
*General price list.* (i)(A) Give a printed or typewritten price list for retention to persons who inquire in person about the funeral goods, funeral services or prices of funeral goods or services offered by the funeral provider. The funeral provider must give the list upon beginning discussion of any of the following:
(1) The prices of funeral goods or services;
(2) The overall type of funeral service or disposition; or
(3) Specific funeral goods or funeral services offered by the funeral provider.

6. Although the record does not include the actual order denying the appeal and request for trial de novo, it indicates an "Order Dismissing Petitioner's Appeal and Request for Trial De Novo" was served on the parties. Mr. Veile did not challenge the denial of his request for a trial de novo, thus, we will not address that issue.

sufficient basis to prosecute and, therefore, the hearing was not a contested case. The court characterized the hearing as an investigation after which the Board determined there was not a sufficient basis to prosecute Mr. Veile's claims. The court also denied Mr. Veile's motion to join the Board as a party. This appeal followed.

## STANDARD OF REVIEW

[¶ 9] We recently restated our standard of review for agency decisions in *State ex rel. Department of Transportation v. Legarda*, 2003 WY 130, ¶¶ 9–10, 77 P.3d 708, ¶¶ 9–10 (Wyo.2003).

Our review is governed by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2003), which provides:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

We do not afford any special deference to the district court's decision when we review a matter initiated before an administrative agency. Rather, this court reviews the case as if it came directly from the administrative agency. Our review must focus on the evidence and consider the reasonableness of the agency's exercise of judgment while determining if the agency committed any errors of law. If the agency committed any errors of law, this court must correct them.

We have further stated:

When an agency decides that the party charged with the burden of proof has failed to meet that burden, the case is reviewed under the "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" language of WYO. STAT. § 16–3–114(c)(ii) (1990).

*Newman v. State ex rel. Workers' Safety & Comp. Div.*, 2002 WY 91, ¶ 12, 49 P.3d 163, ¶ 12 (Wyo.2002) (citations omitted). *See also City of Casper v. Utech*, 895 P.2d 449, 452 (Wyo.1995).

[¶ 10] The arbitrary or capricious test requires the reviewing court to determine whether the agency reasonably could have made its findings and order based upon all the evidence before it. *Newman*, ¶ 19. Although this case presents a slightly unique scenario in that the Board entered a directed verdict after Mr. Veile presented his evidence, that distinction does not require departure from the standard of review applicable when only one party presents evidence. *See Walsh v. Holly Sugar Corp.*, 931 P.2d 241 (Wyo.1997) (affirmed on other grounds) (on appeal, the arbitrary and capricious standard of review applied to an appeal of an administrative hearing examiner's decision to grant a W.R.C.P. 52(c) motion).

[¶ 11] Both parties suggest the appropriate standard of review should include affording Mr. Veile all favorable and reasonable inferences in addition to the arbitrary and capricious standard relying on *Mountain View/Evergreen Improvement & Service District v. Casper Concrete Co.*, 912 P.2d 529, 531 (Wyo.1996) and *Kaiser v. Farnsworth Drilling Co., Inc.*, 851 P.2d 1292, 1295 (Wyo. 1993). However, those cases involve review of judicial action, not administrative action. When reviewing the Board's application of Rule 52(c), we look to see whether in doing so it acted reasonably, and not arbitrarily or capriciously. Rule 52(c) provides that in a trial without a jury, a court may rule against a party after fully hearing that party's evidence and the party against whom such a judgment is considered "shall be entitled to no special inference." Mr. Veile was entitled

to no special inferences by the Board, and we review the Board's decision pursuant to the Wyoming Administrative Procedures Act. The standard of review we apply to a court's decision under Rule 52(c) is not applicable to an agency's decision under that rule.

## DISCUSSION

### Contested Case

■ [¶ 12] The district court denied Mr. Veile's petition for review, in part, because it concluded the proceedings that took place before the Board did not constitute a contested case hearing. "The proceedings can best be characterized as an investigation after which the [Board] determined that there was not a sufficient basis to prosecute Petitioner's claims. Thus, the decision of the [Board] in this matter is not a decision which is subject to court review." However, the parties agree the matter was indeed a contested case subject to review by the district court. For the reasons explained below, we agree.

[¶ 13] A contested case is defined by Wyo. Stat. Ann. § 16–3–101(b)(ii) (LexisNexis 2001) as a proceeding including, but not restricted to, ratemaking, price fixing and licensing, in which legal rights, duties or privileges of a party are required by law to be determined by an agency after an opportunity for hearing. The term "hearing" means a "trial type hearing." *Id.* Mr. Veile filed a petition to revoke or suspend Mr. Bryant's license in accordance with § 33–16–311, which requires a hearing. That statute states in pertinent part:

A petition for the revocation or suspension of a license may be filed by the attorney general or by the county attorney of the county in which the licensee resides or has practiced, *or by any citizen residing in this state.* Said petition shall be filed with the Wyoming state board of embalming and shall be entitled, "In the Matter of the Revocation (or Suspension) of the License of (name of licensee) to Practice Funeral Directing", and shall state the charges against the licensee with reasonable definiteness. Upon the presentation of the petition to said board, the board *shall* make an order *fixing a time and*

*place of hearing* thereon which shall not be less than ten (10) days nor more than thirty (30) days thereafter. Notice of filing of such petition and the time and place of hearing shall be served upon the licensee at least ten (10) days before said hearing. Said notice may be served by any sheriff or constable or by any person especially appointed by the board. Order of revocation or suspension of licenses shall be entered of record and the name of said licensee stricken from the roster of licentiates and the licensee may not engage in the practice of funeral directing after revocation of license or during the time for which it is suspended.

*Id.* (emphasis added).

[¶ 14] Consistent with the statute, the Board held a hearing on Mr. Veile's petition and conducted it as a contested case. All parties, including the hearing examiner, treated the hearing as a contested case, and the Board's final decision states that the hearing was conducted pursuant to the Wyoming Administrative Procedures Act. We hold the proceeding was a contested case and reverse the district court's finding to the contrary.

### Arbitrary and Capricious

■ [¶ 15] As the primary ground for his appeal, Mr. Veile contends the Board's decision that he did not meet his burden of proof was arbitrary and capricious. However, a careful review of the transcript of the hearing demonstrates Mr. Veile failed to present evidence to support his claims that Mr. Bryant violated any statutory or regulatory requirements. Although he offered twelve witnesses who testified over three days, that evidence did not support Mr. Veile's allegations of capping, steering and/or soliciting funeral business, or misrepresentation, in violation of § 33–16–310(a)(ii). For many of the allegations he presented no evidence, and for those allegations for which he did present evidence, it simply did not show Mr. Bryant acted improperly. For example:

1. Mr. Veile alleged Mr. Bryant/Bryant Funeral Home "did cap and/or attempt to steer funeral business in the handling of the body of Robert Bell." As part of

his duties as deputy county coroner, Mr. Bryant was called to the scene of James Bell's son Robert's death, together with the Worland police and Washakie County Coroner, Mr. Martinson. Mr. Bell clearly stated he wanted Mr. Veile to take care of his son's funeral arrangements. However, because an autopsy was to be performed in Billings to determine the cause of death, Mr. Veile was not authorized to pick up the body at that time. Instead, Mr. Bryant took the body to Billings to be autopsied. Mr. Bell admitted he was uncomfortable stating in front of Mr. Bryant that he wanted Mr. Veile to take care of his son's body, rather than Mr. Bryant. "Well, I just don't feel comfortable making those decisions with someone in the same profession already being on the scene." According to Mr. Bell, at no time did anyone say "You must have Mr. Bryant [as your funeral director]," or "We want you to have Mr. Bryant [as your funeral director]." Mr. Bell stated, "I do not have an ax to grind with Mr. Bryant" and while he did feel pressured because of Mr. Bryant's presence, he understood Mr. Bryant was there to pick up the body in his capacity as deputy county coroner. Mr. Bryant was required to be present under the circumstances and there is no evidence he acted improperly. Mr. Bryant did not handle the funeral, Mr. Veile did.

2. Mr. Veile alleged that Bryant Funeral Home "did solicit, attempt to cap, and/or steer funeral business in the handling of the body of Howard R. Steele through Carmeen Sova." Carmeen Sova, Mr. Bryant's mother-in-law and part-time employee, was a longtime friend and neighbor to Howard "Bud" Steele. Ms. Sova cleaned Mr. Steele's house for him every two weeks, and generally looked after him. After Mr. Steele's daughter,

Peggy Mangus, found her father dead in his home, she called an ambulance and the Worland police arrived at the scene. Ms. Sova, who lived three houses down from Mr. Steele, came over to Mr. Steele's house. With Ms. Sova present, Ms. Mangus indicated to the authorities that the family wanted Mr. Veile's mortuary to take care of the funeral arrangements. Ms. Mangus stated: "It was an easy decision because I knew that's who Dad wanted, but it did make me uncomfortable that he asked in front of Carmeen." However, Ms. Mangus also stated there was nothing that led her to believe that Ms. Sova was at Mr. Steele's house for an impure or ulterior motive, but was there as a friend and neighbor. As Ms. Mangus requested, Mr. Veile handled Mr. Steele's funeral arrangements. Again, Mr. Veile presented no evidence of improper conduct by Mr. Bryant or his mother-in-law.

3. In eleven of the allegations, Mr. Veile alleged that Mr. Bryant billed customers in excess of the amounts set forth in his general price list which, Mr. Veile contended, violated § 33–16–310(a)(2)(A), which prohibits misrepresentation or fraud in the conduct of the business or the profession of a funeral director. Mr. Veile alleged Mr. Bryant overcharged families for mileage in transporting bodies, overcharged for state sales tax, and double billed families for the same funeral services (such as removal of bodies and embalming).

Mr. Bryant testified regarding Mr. Veile's allegations of not providing families with a statement of goods and services as required by Board and FTC rules. The statement of goods and services is an itemized list of the goods and services the consumer selects from the general price list.[7] Mr. Veile alleged

---

7. 16 C.F.R. § 453.3(5) (2003) states:
Statement of funeral goods and services selected. (i) Give an itemized written statement for retention to each person who arranges a funeral or other disposition of human remains, at the conclusion of the discussion of arrangements. The statement must list at least the following information:

(A) The funeral goods and funeral services selected by that person and the prices to be paid for each of them;
(B) Specifically itemized cash advance items. (These prices must be given to the extent then known or reasonably ascertainable. If the prices are not known or reasonably ascertainable, a good faith estimate shall be

Mr. Bryant only provided families with invoices and not statements of goods and services, contrary to FTC regulations. However, Mr. Bryant testified that he did provide families with a statement of goods and services and no testimony was presented to the contrary.

As to the allegations of overcharging families, Mr. Bryant testified and adequately explained that his mileage charges differed when he acted as a deputy county coroner rather than a private funeral home director. Mr. Bryant also testified he did not double bill families. In fact, during his testimony, it was discovered that he actually undercharged the family whom Mr. Veile accused him of double billing.

Regarding the sales tax allegations, Mr. Robert Tomkins, manager of the taxpayer services section for the Wyoming Department of Revenue Excise Tax Division, who audited Bryant Funeral Home, testified that under the applicable statute, the way Mr. Bryant accounted for sales taxes on his services was perfectly legitimate. Mr. Tompkins also acknowledged that the Department of Revenue had no problem with Mr. Bryant's business practices and had seen no reason to file charges against Mr. Bryant.

4. Mr. Veile alleged that Mr. Bryant, while acting as deputy county coroner, failed to provide families with a choice of funeral homes. However, the evidence did not support that allegation. Mr. Martinson, the Washakie County Coroner, testified as to Mr. Bryant's practices as a deputy county coroner. He testified that Mr. Bryant "stays in the background" so that he does not influence the family's decision as to which funeral home they want to use.

5. Mr. Gary Adams, Mr. Veile's investigator, testified regarding four of the situations in which Mr. Veile alleged Mr. Bryant solicited, capped, and/or steered funeral business from various families by failing to inform them that they had a

choice of funeral homes. Mr. Adams interviewed the family members involved asking them two questions: "Were you offered a choice of funeral homes" and "Were you aware there were two funeral homes in, Worland?" The interviewees all replied they were either not offered a choice, or did not remember being offered a choice, nor were they aware there was more than one funeral home in Worland. However, Mr. Adams also indicated that the interviewees said things like, "It was a long time ago," or "It was a difficult situation," and "I don't remember a lot of things," and "That was a really tough, stressful time." Mr. Adams stated that at no time did he get the impression that it was suggested to any interviewee that they had to use the Bryant Funeral Home. Even Mr. Veile's own investigator was unable to find any evidence of improper action by Mr. Bryant.

6. Mr. Veile called Mr. Ed Robinson as an expert witness to support his claims that violations had occurred. However, the record shows Mr. Robinson did not testify violations had actually occurred, but speculated they may have. On direct examination, Mr. Robinson testified, based on depositions and Gary Adams' report, that it *"may appear"* Mr. Bryant was capping the body of James Doty, that Mr. Bryant *"might have"* controlled the situation involving the body of Charles Cabarett, and that Stan Tims *"may have* steered business in [Mr. Bryant's] direction," but admitted there was a possibility he did not.

7. Mr. Robinson also testified regarding Mr. Veile's allegations of Mr. Bryant's misrepresentation of the cost of funeral services to his customers. After being presented with funeral *invoices* from the Bryant Funeral Home, Mr. Robinson testified that the post-funeral invoice charges did not match Mr. Bryant's general price list, in effect suggesting Mr. Bryant had misrepresented the cost of his services and violated FTC and Board

given and a written statement of the actual charges shall be provided before the final bill is paid); and

(C) The total cost of the goods and serviced selected.

rules. However, during cross-examination, Mr. Robinson admitted no violation occurred, because the rules require specific information on *statements of goods and services,* not on *invoices* and Mr. Robinson had reviewed invoices and not statements of goods and services. Mr. Robinson's testimony failed to support Mr. Veile's claim that Mr. Bryant had violated any statute or rule.

[¶ 16] After a review of the entire record before us, we hold the Board's decision that Mr. Veile failed to meet his burden of proof was reasonable and shows no indication of arbitrariness or capriciousness. Even if we apply the standard of review applicable to judicial action, giving Mr. Veile all favorable inferences, we reach the same result. The most this record reflects is some funeral home customers might have felt uncomfortable with Mr. Bryant's presence in his capacity of deputy county coroner. However, each of the situations lacked evidence that Mr. Bryant acted improperly. The record also reflects Mr. Bryant's practice regarding billing was appropriate.

### Costs and Fees

■ [¶ 17] Mr. Veile argues the Board violated its own rules by refusing to participate in the contested case regarding Mr. Bryant's license, causing Mr. Veile to incur certain expenses for which he claims he should be reimbursed. We conclude the Board acted properly and no authority exists to provide Mr. Veile reimbursement for the expenses he incurred in prosecuting his complaints.

[¶ 18] Section 33–16–311 states:

A petition for the revocation or suspension of a license may be filed by the attorney general or by the county attorney of the county in which the licensee resides or has practiced, or by *any citizen* residing in this state.

The statute mandates that, after receiving a petition for the revocation or suspension of a license, the Board "shall make an order fixing a time and place of hearing." Thus, the Board followed the statute and set the matter for hearing based solely on Mr. Veile's petition. However, Mr. Veile asserts that

because the Board sent a document entitled "Notice and Complaint" to Mr. Bryant, the Board was somehow proceeding pursuant to Chapter 11, 3(b)(i) of the Board's rules which sets forth a process for handling *complaints,* and therefore, the Board should have prosecuted the case according to that provision of the Board's rules which states:

A committee of two (2) Board members, appointed on a rotating basis by the president of the Board, shall review each complaint and where necessary, direct further investigation.

. . .

(b) Following review and investigation of a complaint, the committee may take any appropriate action, including but not necessarily limited to the following:

(i) Forward the complaint filed by a complainant to the Board for formal disciplinary proceedings.

However, the rules do not address how the Board is to proceed when "any person" files a petition for revocation or suspension of license pursuant to the statute. The "Notice and Complaint" sent by the Board was simply notice to Mr. Bryant as required by § 33–16–311, not a complaint filed on behalf of the Board. In fact, the record indicates the Board did not draft, mail or serve the document. A letter from Mr. Veile's attorney stated:

Please find enclosed the original Notice and Complaint to be served upon Mike Bryant via the Sheriff of Washakie County. Would you please have an appropriate agent or member of the Board sign this, forward it for service and request a return of service for filing?

I am providing this to you directly so that there is no confusion of its whereabouts.

Correspondence from the Board recognizes the purpose of the document is only that of notice: "This letter is to place you on notice."

[¶ 19] The Board had received, considered and dismissed Mr. Veile's prior complaints regarding Mr. Bryant. In a letter to Mr. Veile dated September 20, 1996, the Board stated:

Based on the evidence submitted in the complete report, the recommendation to the Board was to dismiss all complaints filed by you for lack of evidence supporting your claims. The Board was [apprised] of the situation and concurred with the recommendation of the investigative committee. Accordingly, the complaints against Mr. Bryant have been dismissed and the Board now considers the matter closed.

From that point on, the Board made it clear to Mr. Veile that it considered the matter closed. When Mr. Veile filed a "Petition for Revocation or Suspension of License," the Board immediately responded to "apprise [Mr. Veile] of the board's interpretation of Wyo. Stat. § 33–16–311." The letter quoted the statute and then stated:

The statute requires the board to set the matter for hearing. The statute does not, however, state that the board is responsible for presentation of the petition. The board contends that neither the board nor its counsel [is] responsible for presenting the petition or the case for consideration at the hearing. The board interprets the statutes to mean that the petitioner is responsible for presentation of the petition and evidence at the hearing. The board would then rule on evidence presented at the hearing.

When Mr. Veile was granted permission to present additional information to the Board, Mr. Veile's attorney wrote the Board's attorney a letter on January 20, 2000, stating:

I would draw your attention to Wyo. Stat. 33–16–311, wherein it provides that, "Upon presentation of the petition to said board, the board **SHALL** make an order fixing a time and place of hearing hereon thereon ..." [emphasis added.] I have enclosed a letter from Susan Sellers, one of your predecessors, wherein she believes that we would be responsible for prosecuting the case before the Board. I am not sure how that would comport with the Board's Rules, but we are fully willing to prosecute the case before the Board.... Quite frankly, I would welcome that opportunity.

We can infer from the correspondence between the Board and Mr. Veile that Mr. Veile filed the "Reassertion, Refiling and Supplement to Amended Petition for Revocation or Suspension" with full knowledge that the Board would not pursue the action, and that Mr. Veile would be required to do so. Nothing in the statute or rules required the Board to do otherwise.

[¶ 20] The statute provides no authority for reimbursement of costs and fees incurred by a person pursuing a complaint. Therefore, Mr. Veile's claim for such reimbursement must be rejected.

### Findings of Fact and Conclusions of Law

[¶ 21] Mr. Veile contends the Board's findings of fact and conclusions of law are vague, conclusory, inadequate and contrary to Wyo. Stat. Ann. § 16–3–110 (LexisNexis 2003). Mr. Bryant counters that the Board identified each allegation made by Mr. Veile, stated its conclusion that the evidence presented by Mr. Veile did not support those findings, and they complied with § 16–3–110.

[¶ 22] Section 16–3–110 sets forth an agency's duty to support its action with sufficient factual findings:

A final decision or order adverse to a party in a contested case shall be in writing or dictated into the record. The final decision shall include findings of fact and conclusions of law separately stated. Findings of fact if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

As we recently stated in *Legarda*, ¶ 13:

In discharging its duty under § 16–3–110, the agency must "make findings of basic facts upon all of the material issues in the proceeding and upon which its ultimate findings of fact or conclusions are based." *Pan American Petroleum Corporation v. Wyoming Oil and Gas Conservation Commission*, 446 P.2d 550, 555 (Wyo. 1968). This Court needs to know "why" an agency decided the way it did. When an agency does not make adequate findings of basic fact, we do not have a rational basis upon which to review its ultimate findings and conclusions.

*Scott v. McTiernan,* 974 P.2d 966, 969 (Wyo.1999) (citations omitted); *see also Mayland v. Flitner,* 2001 WY 69, P13, 28 P.3d 838, P13 (Wyo.2001). It is insufficient for an administrative agency to state only an ultimate fact or conclusion. Each ultimate fact or conclusion must be thoroughly explained in order for a court to determine upon what basis the ultimate fact or conclusion was reached. *Billings v. Wyoming Board of Outfitters and Guides,* 2001 WY 81, P13, 30 P.3d 557, P13 (Wyo. 2001). When an agency does not set forth the reasons for its actions—that is, when its findings are conclusory—this Court cannot uphold its decision. *Juroszek v. City of Sheridan Board of Adjustment,* 948 P.2d 1370, 1373 (Wyo.1997); *Basin Electric Power Cooperative, Inc. v. Department of Revenue, State of Wyoming,* 970 P.2d 841, 854 (Wyo.1998).

[¶ 23] In *City of Casper,* 895 P.2d at 451–52, we discussed the issue of the adequacy of the findings where the agency concludes the party with the burden of proof failed to carry that burden:

We agree mere summaries of evidence are insufficient to constitute findings. 2 FRANK E. COOPER, STATE ADMINISTRATIVE LAW 471, 478 (1965). Our rule is that the agency, as the trier of fact, has the duty to weigh the evidence and determine the credibility of the evidence and the witnesses.

. . .

[W]e are satisfied that, when the agency concludes there is a failure of proof because "insufficient evidence was received by the panel" to permit the agency to find any of the allegations of the party charged with the burden of proof, *Pan American* does not apply.

. . .

We are satisfied, given some thirty years of additional experience with respect to administrative proceedings, a practical and pragmatic rule can be announced with respect to this issue. We hold, since we cannot reweigh the evidence nor redetermine the credibility of the evidence, no purpose is to be served by demanding the agency explain how it evaluated the evidence in arriving at a conclusion that a party failed to meet its burden of proof.

[¶ 24] While some of the Board's findings of fact in this case appear conclusory, a review of the entire order reveals the Board adequately explained its decision. For the allegations for which Mr. Veile failed to present any evidence, the Board simply stated his evidence was insufficient, and for the allegations for which evidence was presented, the Board explained its reasoning for concluding it was inadequate. Those findings state:

24. Mr. Veile's expert witness, Ed Robinson, interspersed his testimony with responses such as "it appears he may have capped," the invoices would not comply with FTC, "as I understand the federal rules." Mr. Robinson testified that he only assumed statements of goods and services had not been provided to the families. He had no personal knowledge. Mr. Robinson also testified that invoices did not have to include the same information as required by statements of goods and services. He further testified that a funeral home director may contract with an entity such as Washakie County for prices outside the GPL [General Price Lists] without violating any law or rules. Finally, he testified that a coroner may elect to pay more than the GPL amounts to a funeral home or to a deputy coroner.

25. Another of Mr. Veile's witnesses, Robert Tompkins, a manager with the Wyoming Department of Revenue Excise Tax Division, testified that Mr. Bryant's taxing procedures were perfectly legitimate. Further, Mr. Tompkins testified that the Wyoming Department of Revenue had no problems with Mr. Bryant's business practices.

26. Gary Adams, the investigator Mr. Veile paid to conduct the investigation in this matter, testified that, during his investigation, no witness ever said that someone suggested or recommended to them one funeral home over another.

27. The county coroner for Washakie County, Mr. Martinson, testified that when Mr. Bryant is present at a death scene as a deputy coroner, Mr. Bryant

stays in the background in order not to involve himself in any decisions about which funeral home might receive the business. Mr. Martinson also testified that Mr. Bryant solicited advice from Mr. Martinson as to how Mr. Bryant could conduct himself in order to avoid any appearance of impropriety. Mr. Martinson testified it was his idea and decision as county coroner to pay Mr. Bryant above what Mr. Bryant's GPL set forth. Mr. Martinson also testified that he, personally, does no like to use Veile for retrieval of dead bodies because he feels he cannot trust Veile. Finally, Mr. Martinson testified that Mr. Bryant had never attempted to influence Mr. Martinson in order to obtain more business.

28. Gloria Johnson testified that she was not given a choice of funeral homes by Stan Tims, deputy coroner for Washakie County, upon the death of her mother Mollie Zeiler. However, Stan Tims testified that he advised Ms. Johnson of a choice of funeral homes in Worland. Mr. Tims also testified that he had never attempted to cap and steer for Mr. Bryant. Finally, Ms. Johnson testified that she selected and used Veile's funeral home.

29. Throughout several hours of testimony, Mr. Bryant provided explanations for allegations regarding his mileage charges, his tax practices, how he came to have two (2) GPL's and all other allegations.

When reviewed as a whole, the findings fully complied with § 16–3–110.

*Board As A Necessary Party*

[¶ 25] Mr. Veile argues the Board is a necessary party to this appeal. "Generally a court or board exercising judicial or quasi-judicial functions, not being a party to its proceedings, and not having any legal interest in maintaining its determination, can neither appeal from a judgment or order of a court reversing the proceedings nor be heard on the appeal." 4 C.J.S. *Appeal and Error* § 175 (1993), *Antelope Valley Improvement & Service District v. State Board of Equalization*, 992 P.2d 563 (Wyo.

1999). "Any person who is not a party in an original action is not a necessary party to an appeal." *Anita Ditch Co. v. Turner*, 389 P.2d 1018, 1022 (Wyo.1964). Clearly, the Board was not a party to the original action and cannot be a party to this appeal.

**CONCLUSION**

[¶ 26] The record of the Board's contested case hearing fully supports its conclusion that Mr. Veile failed to meet his burden of proving that Mr. Bryant's funeral director's license should be revoked. The findings of fact and conclusions of law were sufficiently thorough and detailed to allow us to understand the Board's reasoning and to conduct our own review. Further, Mr. Veile pursued the matter of his own volition and, in the absence of statutory authority, is not entitled to reimbursement of costs and fees he may have incurred. The district court's decision to deny Mr. Veile's petition for review is reversed and the Board's order is affirmed.

GOLDEN, J., filed a dissenting opinion.

GOLDEN, Justice, dissenting.

[¶ 27] As an initial observation, I must disagree with the majority opinion's affirmance of the order of the Board of Embalmers. The order on appeal is the order of the district court dismissing Veile's petition for review. Even if the majority opinion is correct in determining that the dismissal of Veile's petition by the district court was in error, the appropriate resolution of this appeal is to remand the case to the district court. It is for the district court to review the agency action in the first instance, not this Court.

[¶ 28] That being said, my more fundamental disagreement with the majority opinion is that I believe the order of the district court dismissing Veile's petition for review should be affirmed. The district court dismissed Veile's petition for review on the grounds that the prior proceeding before the Board of Embalmers was not a contested case subject to review pursuant to the WAPA. The pertinent part of the district court order specifically reads:

That the order from which [Veile's] appeal is taken is not an order which is subject to review for the following reasons:

a. W.S. § 33–16–311 allows any citizen to file a petition for revocation or suspension of a license issued by the Wyoming Board of Embalming; however, there is no authorization for the citizen to prosecute the claim.

b. Upon receiving a petition for revocation or suspension of a license issued by the Wyoming Board of Embalming from a citizen, it is the duty of the Wyoming Board of Embalming to determine if there is a sufficient basis to prosecute.

c. W.S. § 16–3–112(c) allows the Wyoming Board of Embalming to utilize the attorney general's office to investigate, prepare, present and prosecute a contested case. The Wyoming statutes do not allow the Wyoming Board of Embalming to utilize the complaining citizen for these purposes.

d. The proceedings which took place before the Wyoming Board of Embalming do not represent a contested case hearing, Instead, such proceedings can best be characterized as an investigation after which the Wyoming Board of Embalming determined that there was not a sufficient basis to prosecute Petitioner's claims.

e. The decision of the Wyoming Board of Embalming in this matter is not a decision which is subject to court review.

According to the order, the district court reasoned that the prior proceedings before the Board could not have been a contested case pursuant to the WAPA because a private citizen is not statutorily authorized under the WAPA to prosecute a contested case. Essentially, the district court determined that it did not have jurisdiction to hear the petition.

[¶ 29] The district court is correct in this contention, as even the appellant concedes.[8] The fact that the Board styled the hearing as a contested case and all the participants conducted the proceeding as a contested case cannot transform the proceeding into a contested case under the WAPA. Bryant suggests that this Court accept that the proceedings were a contested case in the name of judicial economy. While I am mindful of the burden these proceedings have already inflicted upon all participants, such concern cannot create jurisdiction where none otherwise exists. The district court's ruling that there was no WAPA contested case for it to review is correct and should be affirmed.

[¶ 30] The real legal problem presented by this appeal is that the parties below invoked two different, and mutually exclusive, procedures. The parties began the process under Wyo. Stat. Ann. § 33–16–311,[9] which allows a private citizen to bring a complaint. The proceedings contemplated by Wyo. Stat. Ann. §§ 33–16–311 and 312 seem relatively straight forward. Once a petition is presented to the Board, the Board must hold a hearing and make an expeditious decision within thirty days. The losing party can then "appeal" to the district court, and the district court conducts a full trial de novo.[10] If the Board revokes or suspends someone's

8. In his brief, Veile states "[t]he bases for the dismissal were that Mr. Veile had no authority to investigate or prosecute the licensing matter, as asserted by Mr. Veile...." Veile uses the reasoning of the district court to support his third issue regarding whether he should have been required by the Board to prosecute and pay for the proceedings before the Board: "The Board, if it had decided to defend its action, might have argued that Mr. Veile accepted the responsibility to prosecute the disciplinary case. However, such action is void ab initio, because of the lack of statutory authority to do so." In other words, Veile accepts that he had no statutory authority to prosecute a contested case under the WAPA and any attempt on his part to prosecute a contested case under the WAPA would be a nullity—exactly what the district court held.

9. Quoted at ¶ 13 of the majority opinion.

10. § 33–16–312. Petition for revocation or suspension of license; appeal to district court.

Both parties shall have the right of appeal to the district court of the county in which the licensee resides at any time within thirty (30) days after entry of the order of the board. The service of a notice in writing, of the intention of taking such an appeal, within ten (10) days after the entry of the order shall be sufficient notice to the adverse party of such appeal. A transcript of all pleadings upon which the cause was submitted to the board, duly certified, shall be filed in the office of the clerk of the district court and such filing shall complete the appeal. The trial of the district court upon such appeal shall be de novo. In the event the licensee appeals, the

license, then the licensee must post a bond if he wants to continue business during the pendency of the trial. If the parties had followed this procedure, Veile arguably would have been entitled to a trial de novo once the Board determined his complaints were not well founded. Veile did file an "Appeal" pursuant to § 33–16–312 requesting a trial de novo, but his "Appeal" was dismissed. Veile has not appealed that dismissal to this Court so the propriety thereof is not before us. *See* footnote 6, majority opinion.

[¶ 31] Instead of following the dictates of §§ 33–16–311 and 312, however, after Veile brought a petition pursuant to § 33–16–311, the Board purported to turn the proceedings into a contested case pursuant to the WAPA, all the while maintaining Veile as the complaining party. As already discussed, the district court is correct that the WAPA does not allow for a private citizen to prosecute a complaint under the WAPA. Thus, despite the actions of the Board, and the acceptance of those actions by the parties, there was no official contested case pursuant to the WAPA. The discussion of this Court should end with the affirmance of the district court order dismissing the attempt to petition the district court to review a contested case pursuant to the WAPA.

[¶ 32] The question that remained unresolved in this proceeding is which procedure should be applied: the statutory procedure under §§ 33–16–311, 312, or a contested case hearing under the WAPA? The Board utilized a hybrid procedure that, in essence, the district court correctly rejected. According to Veile's brief, the argument presented to the district court with regards to dismissing Veile's "Appeal," was that § 33–16–312 has been repealed by implication by the passage of the WAPA. It seems that the determination of which procedure applies raises an interesting question of statutory interpretation.[11] The Board certainly hasn't helped resolve this question. While Chapter 11 of the Board rules sets up a contested case type proceeding for hearings with review pursuant to the WAPA, Chapter 10 of the Board rules essentially simply restates the language of §§ 33–16–311 and 312. Thus even the Board, in its own rules, does not specify the proper procedure but rather allows for both procedures, adding to the confusion.[12] The specific question of which procedure applies, however, is not properly before this Court so it remains simply an interesting legal question, to be answered another day.

[¶ 33] Given the exact nature of the appeal taken, the order of the district court should be affirmed. In either case, an analysis by this Court of the propriety of any action taken by the Board is inappropriate. I therefore respectfully dissent.

---

decision of the board shall not be stayed by the proceedings on appeal and such appeal shall not operate to restore the right of the licensee to practice pending such appeal, unless bond, with sufficient surety, to be approved by said clerk of the district court, shall be posted with said clerk of the district court, in such sums as the judge or court commissioner may require, conditioned that such appeal shall be prosecuted without unnecessary delay and in case the decision appealed from be confirmed the licensee shall pay all costs.

11. I note, for instance, Wyo. Stat. Ann. § 16–3–113 of the WAPA states that the contested case procedures of the WAPA apply to all licensing procedures that, by law, are subject to a hearing. In his brief, Veile presents a summary argument that the Board could proceed only pursuant to a contested case under the WAPA. This argument, however, was presented in support of Veile's contention that the proceeding before the Board was a contested case under the WAPA—because it had to be a contested case under the WAPA.

Obviously this argument, when placed in the context within it was offered, begs the question.

12. The statutes do, of course, govern over agency rules. " 'An agency is wholly without power to modify, dilute or change in any way the statutory provisions from which it derives its authority.' *Platte Development Co. v. State, Environmental Quality Council,* 966 P.2d 972, 975 (Wyo.1998). Thus, administrative agencies are bound to comply with their enabling statutes. *Sears v. Romer,* 928 P.2d 745, 751 (Colo.App.1996). An administrative rule or regulation which is not expressly or impliedly authorized by statute is without force or effect if it adds to, changes, modifies, or conflicts with an existing statute. *Id.* Conversely, a rule or regulation which is expressly or impliedly authorized by the enabling statute will be given force and effect." *Billings v. Wyo. Bd. of Outfitters,* 2001 WY 81, ¶ 24, 30 P.3d 557, ¶ 24 (Wyo.2001).